367 P.2d 284

Curtis D. PETERSON, Plaintiff-Appellant,

v.

**IDAHO FIRST NATIONAL BANK,**
a corporation, Defendant-
Respondent.

No. 9027.

Supreme Court of Idaho.

Dec. 8, 1961.

McCarthy & Adams, Lewiston, for appellant.

Cox, Ware, Stellmon & O'Connell, Lewiston, for respondent.

TAYLOR, Chief Justice, and McFADDEN, Justice.

Plaintiff (appellant) brought this appeal from a judgment of dismissal entered by the trial court on motion of defendant (respondent.)

The complaint was filed March 23, 1960. Motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted, was filed April 13, 1960. Order dismissing the action, without leave to amend and with prejudice, was filed January 10, 1961. Notice of appeal and praecipe were filed January 12, 1961.

March 9, 1961, the following order was made and filed by the district judge:

"It being represented to the Court that additional time is required for the preparation of the Clerk's transcript on appeal in the above entitled cause, It Is Hereby Ordered:

"That the time for preparing and lodging said transcript is extended 90 days from the date hereof."

The clerk's transcript was filed in this court April 18, 1961. No extension of time for the filing of the transcript was granted by this court or by any justice thereof. Appellate rule 32. On April 24, 1961, the cause was set to be heard on the merits at Lewiston on May 10, 1961. April 28, 1961, defendant filed a motion for an order dismissing the appeal on two grounds: first, that the certificate, required by rule 35 of the appellate rules of this court, as to the papers submitted to and used by the district judge on the hearing of the motion to dismiss, was not attached to or made a part of the transcript; and, second, that the transcript was not filed within 60 days of the filing of the praecipe. Appellate rule 29. The day for hearing on the merits being near, when the motion to dismiss the appeal was filed, this court on May 1, 1961, suspended the operation of rule 14, and set the motion to dismiss for hearing on May 10, 1961, at the time of the hearing on the merits.

At the hearing, plaintiff presented a certificate, signed by his counsel, which was thereupon signed by defendant's counsel and filed with the clerk. The certificate complies with rule 35 as to form and substance and, although filed late, no prejudice appearing, is sufficient. Julien v. Barker, 75 Idaho 413, 272 P.2d 718; Owen v. Taylor, 62 Idaho 408, 114 P.2d 258; Gloubitz v. Smeed Bros., 52 Idaho 725, 20 P.2d 198.

May 18, 1961, plaintiff filed a reply to defendant's motion for dismissal of the appeal. Prior to this filing plaintiff had been relying upon the order of the trial judge extending time for filing the clerk's transcript, and at the hearing made the contention that under appellate rule 32, which provides that an extension of the time to file the transcript may be granted "by order of a Justice", the term "justice" in a generic sense includes the trial judge. We do not so construe the rule.

In view of the shortness of the time between the perfection of the appeal and the hearing thereof, we have considered the reply filed by plaintiff on May 18th. From this it appears that the delay in the preparation of the transcript was due to the illness of the deputy clerk, whose duty it was to prepare the same, and the fact that such deputy had three other transcripts to prepare at the same time, and that neither appellant nor his counsel was responsible

therefor. Appellate rule 33. See Fischer v. Davis, 24 Idaho 216, 133 P. 910.

The motion to dismiss the appeal is denied.

This action was brought to recover damages for an alleged violation of the right of privacy. Plaintiff alleged that at the time involved he was a depositor in the Lewiston office of the defendant bank and,

"That in the month of January, 1960, said Bank, through the officials at said office, with malice and without authorization of the plaintiff, violated the rights of privacy of the plaintiff by disclosing information concerning transactions involving his personal bank account at said bank, and that plaintiff herein was greatly damaged thereby."

A hearing was had upon the motion of the defendant to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted. Depositions of the manager of the Lewiston office of the bank and an employee of that office were submitted to and considered by the court upon the hearing. The motion was granted and this appeal was brought from the order dismissing the action with prejudice.

At the time involved, plaintiff was the manager of the Lewiston office of the Family Finance Corporation, which was also a depositor in the Lewiston office of the defendant. In the fall of 1959 a managing officer from the home office of the Family Finance Corporation at Denver, Colorado, called at the bank and asked the manager to advise him at any time it should appear that one of his employees "might be doing anything that might bring discredit to the company." On January 12, 1960, the manager of the bank mailed to the officer of the Family Finance Corporation a lettter as follows:

"Personal and confidential. George P. Biagiotti, Room 601, Railway Exchange Building, Denver 2, Colorado. Dear Mr. Biagiotti: Perhaps it would be wise for you and *I* to get together in the very near future. The personal finances of your local representative have deteriorated to the point where much unfavorable criticism is being voiced. We have returned a large number of checks for not sufficient funds, and I fear some of the holders of these checks could take legal action. Yours very truly, R. H. Clay, Manager."

On January 14 and 15 Mr. Biagiotti called at the bank, was shown the ledger record of plaintiff's personal account and was advised of certain checks drawn by plaintiff which the bank had returned to local business drawees, for "not sufficient funds." These disclosures were made without the knowledge or consent of the plaintiff.

In his deposition the manager of the bank testified it was against the policy of

the bank to give out information concerning a depositor's account, but that the manager had discretionary authority to do so in certain cases. We have no statutory law prohibiting or regulating the furnishing of such information by banks, nor defining or protecting the "right of privacy" claimed by plaintiff.

This "right of privacy" was forcefully brought to the attention of the bench and bar and the public in an article appearing in 4 Harvard Law Review 193 by Warren and Brandeis in 1890. Recently, Professor Prosser re-evaluated this article in light of its experience in the courts throughout the seventy years since its publication. Privacy, William L. Prosser, 48 California Law Review 383. See also Prosser on Torts, 2nd ed., p. 635.

Professor Prosser classified these types of cases into four categories (48 Cal. Law Review, Privacy):

"1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

"2. Public disclosure of embarrassing private facts about the plaintiff.

"3. Publicity which places the plaintiff in a false light in the public eye.

"4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." at p. 389.

Concerning the first classification it is stated:

"It appears obvious that the interest protected by this branch of the tort is primarily a mental one. It has been useful chiefly to fill the gaps left by trespass, nuisance, the intentional infliction of mental distress, and whatever remedies there may be for the invasion of constitutional rights." at p. 392.

Concerning the second classification, certain limits appear fairly well marked out:

"First, the disclosure of the private facts must be a public disclosure and not a private one. There must be, in other words, publicity." at p. 393.

"Second, the facts disclosed to the public must be private facts, and not public ones." at p. 394.

"Third, the matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities." at p. 396.

As to the third classification, it is stated:

" * * * The interest protected is clearly that of reputation, with the same overtones of mental distress as in defamation." at p. 400.

Concerning the fourth classification, it is necessary that there shall have been an appropriation of an aspect of the plaintiff's

**584**

identity, and of his name or likeness to the defendant's own advantage.

In comparing these four classifications, Professor Prosser states:

"Taking them in order—intrusion, disclosure, false light, and appropriation—the first and second require the invasion of something secret, secluded or private pertaining to the plaintiff; the third and fourth do not. The second and third depend upon publicity, while the first does not, nor does the fourth, although it usually involves it. The third requires falsity or fiction; the other three do not. The fourth involves a use for the defendant's advantage, which is not true of the rest. Obviously this is an area in which one must tread warily and be on the lookout for bogs." Privacy, Prosser, 48 Cal. Law Review, 383, at 407, 408.

The American Law Institute defined the right thus:

"A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other." 4 Restatement of Torts, § 867.

In Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964, the right of privacy is defined:

"* * * it is generally recognized as the right to be let alone, that is, the right of a person to be free from unwarranted publicity, or the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned." 299 S.W. at 969, 970.

California has recognized the right of privacy as within the constitutional guarantee of the right to pursue and obtain happiness. Melvin v. Reid, 112 Cal.App. 285, 297 P. 91; Gill v. Curtis Pub. Co., 38 Cal.2d 273, 239 P.2d 630. In the latter case the supreme court of California said:

"Recognition has been given of a right of privacy, independent of the common rights of property, contract, reputation and physical integrity, generally described as 'the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short, it is the right to be let alone.'" 239 P.2d at 632.

A majority of the states recognize the right of privacy in various situations and upon various grounds. Annotations 14 A.L.R.2d 750, 168 A.L.R. 446, 138 A.L.R. 22; 77 C.J.S. Right of Privacy § 1; 41 Am.Jur., Privacy, § 9.

Plaintiff makes no claim that the disclosure of the information contained in his account was made public, beyond that disclosed to his employer. In cases involving an analogous situation where creditors in over-zealous attempts to collect moneys due

585

have written a person's employer, it is generally held that, absent communication to the public, no liability attaches. See: Patton v. Jacobs, 118 Ind.App. 358, 78 N.E.2d 789; Voneye v. Turner (Ky.), 240 S.W.2d 588; Lucas v. Moskins Stores (Ky.), 262 S.W.2d 679; Hawley v. Professional Credit Bureau, Inc., 345 Mich. 500, 76 N.W.2d 835; Lewis v. Physicians & Dentists Credit Bureau, 27 Wash.2d 267, 177 P.2d 896.

Dicta in the case of Voneye v. Turner, supra, is worthy of consideration in the instant case:

" * * * Ordinarily an employer is interested in the ability and reputation of his employees as to payment of debts, which makes for efficiency in work and saves the employer the annoyance and expense of answering garnishments. So with reason it cannot be said this letter was directed to one who had no interest in or who was not concerned with plaintiff's payment of his just and legal obligation. A debtor when he creates an obligation must know that his creditor expects to collect it, and the ordinary man realizes that most employers expect their employees to meet their obligations and that when they fall behind in so doing the employer may be asked to take the matter up with them. Indeed, most debtors would prefer to have their delinquencies referred to their employers in a courteous and inconspicuous manner rather than to have a suit filed against them and their wages garnisheed." 240 S.W.2d at p. 591.

Plaintiff alleges no dissemination of the information obtained by the disclosure and also refuses to acknowledge that such invasion may have been justified under the claimed discretion of the bank manager. We, therefore, hold that plaintiff's complaint fails to state a claim upon which relief can be granted on the ground of invasion of his "right of privacy." However, if the complaint alleges facts, which would entitle the pleader to relief on some ground or theory other than that upon which he urges his cause, it is not subject to motion to dismiss under the rule. I.R.C.P. rule 12(b). Hathaway Motors, Inc. v. General Motors Corp., D.C., 18 F.R.D. 283; Swenson v. Suhl, D.C., 19 F.R.D. 517; Williams v. Williams, 82 Idaho 451, 354 P.2d 747; Wackerli v. Martindale, 82 Idaho 400, 353 P.2d 782.

We shall, therefore, consider the allegations of the complaint to determine whether the plaintiff may be entitled to relief upon some ground other than that urged by him.

It is generally stated that the relation between a bank and its general depositor is that of debtor and creditor. Davison v. Allen, 47 Idaho 405, 276 P. 43, 68 A.L.R. 856; 7 Am.Jur., Banks, § 444, p. 313; 9 C.J.S. Banks and Banking § 267(c), p. 546;

5A Michie, Banks and Banking, ch. 9, § 1, p. 1. But it is also said that in discharging its obligation to a depositor a bank must do so subject to the rules of agency. Michie, supra, at p. 12; 9 C.J.S., supra. Cases supporting the application of agency rules in the bank-depositor relation under certain circumstances are: Crawford v. West Side Bank, 100 N.Y. 50, 2 N.E. 881; Third Nat. Bank in Nashville v. Carver, 31 Tenn. App. 520, 218 S.W.2d 66; Dalmatinsko, etc. v. First Union Trust and Savings Bank, 268 Ill.App. 314; Selig v. Wunderlich Contracting Co., 160 Neb. 215, 69 N.W.2d 861; Bernhard v. Bank of America N.T. & S.A. (Cal.App.) 114 P.2d 661. These cases deal with the liability of a bank for paying a forged or materially altered check. They conclude that a bank, as an agent, must comply strictly with the depositor's order; that a forged or materially altered check is not the order of the depositor; and that a bank is therefore liable for its payment unless the depositor has been negligent or has ratified the payment or is otherwise estopped. Most of the cases use language similar to that in the old New York case of Crawford v. West Side Bank, supra, which states:

"The relation existing between a bank and its depositors is, in the strict sense, that of debtor and creditor; but in discharging its obligation as a debtor the bank must do so subject to the rules

obtaining between principal and agent." 2 N.E. 881.

Accepting the relationship of the bank to its depositor as being more than that of a debtor and creditor, the statement of the rule in Restatement of Law of Agency 2nd, § 395, is applicable:

"Unless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal, on his own account or on behalf of another, although such information does not relate to the transaction in which he is then employed, unless the information is a matter of general knowledge."

The status of the records maintained by a bank of a depositor's account has been discussed by various courts. In Zimmermann v. Wilson (C.C.A. 3rd) 81 F.2d 847, an internal revenue officer was enjoined from examining bank books of the plaintiff. The opinion was based in part on the provision of U.S.Const. Amend. 4 (see Idaho Const. art. 1, § 17) and stated:

"A hundred and fifty years ago the far-seeing men who framed the Constitution, mindful of the fact that they had been wrongfully subjected to un-

reasonable search, placed the rugged barrier, 'the right of the people to be secure in their \* \* \* papers, \* \* against unreasonable searches' (Const. Amend. 4), in the pathway of the government then to be established, and made the courts the stern guardians of that barrier if government was tempted to violate it. Regarding as unreasonable this second search, where no fraud, concealment, or wrongdoing by the taxpayer is involved, we remand the record with instructions to reinstate the bill and grant the injunction prayed for." 81 F.2d at 849.

The inviolate status of bank accounts against unreasonable search was also recognized in the case of Brex v. Smith (N.J. Chan.) 104 N.J.Eq. 386, 146 A. 34, which involved an attempt by the prosecutor to demand all bank accounts of all members of a police force. The court, in continuing an injunction against such attempt, stated:

"The question then arises: Are there property rights involved in the application? Can the prosecutor inspect these bank accounts for purposes he declines to disclose? It may be that the relation of a bank to its depositors is that of debtor and creditor, but I think it is more than that. As far as the money actually deposited is concerned, that is true. But, as to the records of the accounts, the deposits and withdrawals,

that is another matter. There is an implied obligation, as I see it, on the bank, to keep these from scrutiny until compelled by a court of competent jurisdiction to do otherwise. The information contained in the records is certainly a property right.

"Mr. Justice Field, afterwards Justice of the United States Supreme Court, in the matter of the application of the Pacific Railway Commission (C.C.) 32 F. 241, at page 250, said:

" 'Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption *of his private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all other rights would lose half their value.' "* 146 A. at 36.

United States v. First National Bank of Mobile (S.D. Alabama) 67 F.Supp. 616, stated that although under the federal law the banks were obligated to cooperate with Internal Revenue Agents in allowing, in proper cases, examination of bank records, nevertheless, the court recognized the bank's obligation to its depositors in the following statement:

"All agree that a bank should protect its business records from the prying

588

eyes of the public, moved by curiosity or malice. No one questions its right to protect its fiduciary relationship with its customers, which, in sound banking practice, as a matter of common knowledge, is done everywhere." 67 F.Supp. at 624.

In 7 Am.Jur., Banks, § 196, at page 150, it is said:

" * * * To give such information to third persons or to the public at the instance of the customer or depositor is certainly not beyond the scope of banking powers. It is a different matter, however, when such information is sought from the bank without the consent of the depositor or customer of the bank. Indeed, it is an implied term of the contract between a banker and his customer that the banker will not divulge to third persons, without the consent of the customer, express or implied, either the state of the customer's account or any of his transactions with the bank, or any information relating to the customer acquired through the keeping of his account, unless the banker is compelled to do so by order of a court, [or] the circumstances give rise to a public duty of disclosure * * *."

Although the foregoing is based upon an implication arising from decisions holding that a banker cannot refuse to give information concerning his depositors' accounts, when questioned in response to a lawful subpœna, it is nevertheless a good statement of the rule applicable here. See also, 9 C.J.S. Banks and Banking § 271c.

The legislature of Idaho has recognized the sanctity of the privacy of bank accounts by enactment of I.C. § 26–812 which makes it punishable for an employee of the department of finance, to disclose any facts or information obtained except under limitations prescribed by the code.

It is inconceivable that a bank would at any time consider itself at liberty to disclose the intimate details of its depositors' accounts. Inviolate secrecy is one of the inherent and fundamental precepts of the relationship of the bank and its customers or depositors. This high ethical standard is recognized by the defendant bank in the instant case, as outlined in the manager's deposition.

■ It is implicit in the contract of the bank with its customer or depositor that no information may be disclosed by the bank or its employees concerning the customer's or depositor's account, and that, unless authorized by law or by the customer or depositor, the bank must be held liable for breach of the implied contract. The claimed discretionary power assumed by the bank manager did not dispense with the necessity of assent by the customer or depositor.

The judgment of dismissal is reversed, and the cause is remanded for further proceedings.

Costs to appellant.

SMITH, KNUDSON and McQUADE, JJ., concur.