**John Edward PRICE, John Bernard Nelson and Franklin R. Sears, Appellants,**

**v.**

**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellee.**

**No. 22630.**

United States Court of Appeals Fifth Circuit.

May 26, 1969.

John B. Nelson, John Edward Price, Fort Worth, Tex., for appellants.

Morton Hollander, Robert C. McDiarmid, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE *, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The question here is whether, under LMRDA,[1] an attorney engaging in "persuader"[2] activities for an employer must

---

* Judge Tuttle, then Chief Judge, was a member of the panel on the initial hearing of this case and also participated in the consideration and determination of the case on rehearing en banc. Subsequently he became a Senior Judge, 28 U.S.C.A. § 371, and is qualified under 28 U.S.C.A. § 46(c) to be a member of the Court on this case. Allen v. Johnson, 5 Cir., 1968, 391 F.2d 527 (en banc); FRAP Rule 35; Fifth Circuit Rule 12.

1. Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq.

2. A "persuader" is any person who enters into an "agreement or arrangement with an employer" an object of which is (1) to persuade employees as to the exercise or manner of exercising their collective bargaining rights, or (2) to supply the employer with information regarding cer-

report not only his receipts and disbursements in connection with such persuader clients but also all his receipts and related disbursements for non-persuader labor relations advice and service for non-persuader clients. The District Court answered in the affirmative. But in the meantime this Court in *Fowler*,[3] Part VII, by a divided Court[4] rendered a negative reply.

Because of the importance of the question, internal differences within the Court, and a conflict between *Fowler* and the Fourth Circuit's decision in *Douglas*[5] we put the *Price* case before the Court en banc.[6]

This narrow question involves the construction of § 203(b) and (c) of the LMRDA, 29 U.S.C.A. § 433(b), (c).[7] After full reconsideration of the issues involved, we now reject our earlier position in Part VII of *Fowler* and adopt the view taken by the Fourth Circuit in *Douglas*. Thus we affirm the decision of the District Court in this case.

Section 203(b) of the LMRDA imposes certain reporting obligations upon persons who enter into persuader arrangements with an employer (see note 2, *supra*). Specifically, once a persuader undertakes an agreement or arrangement of this nature, he must file both

tain activities of employees or a labor organization. See LMRDA § 203(b) (1)–(2), 29 U.S.C.A. § 433(b) (1)–(2), quoted in notes 6, 9, *infra*.

3. Wirtz v. Fowler, 5 Cir., 1966, 372 F.2d 315. That case, of course, involved many other LMRDA issues. Only Part VII of *Fowler*, 372 F.2d at 333, is here involved.

4. The identity of the anonymous dissenter, Part VII, 372 F.2d at 333 n. 42 is, of course, now revealed.

5. Douglas v. Wirtz, 4 Cir., 1965, 353 F.2d 30, *cert. denied*, 1966, 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665.

6. By the order granting rehearing en banc without oral argument in *Price* (No. 22630), the Court stayed the mandate in *Fowler* pending this en banc decision and invited full briefs on this issue from counsel in *Fowler*. Separate briefs were not filed, the attorney-litigants preferring to collaborate in a single brief.

7. The relevant sections with italics highlighting the critical portions, provide:

"(b) *Every person who* pursuant to any agreement or arrangement with *an employer* undertakes activities where an object thereof is, directly or indirectly—

(1) to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

(2) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding

or a criminal or civil judicial proceeding; *shall file* within *thirty days* after entering into such agreement or arrangements a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the name under which such person is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement. Every *such* person shall *file annually*, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its *receipts of any kind* from *employers on account of labor relations advice or services*, designating the sources thereof, and (B) of *its disbursements* of any kind, *in connection with such services* and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

"(c) Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person *by reason of his giving or agreeing to give advice to such employer or representing or agreeing to* represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder."

29 U.S.C.A. § 433(b), (c).

"30 day" and annual reports with the Secretary of Labor. The "30 day" reports must be filed with respect to each agreement or arrangement and must set forth the terms of the agreement or arrangement. The annual reports are to be filed with respect to each fiscal year during which payments were made as a result of an agreement of arrangement. It is the annual report which precipitates the problem here. For these reports must contain "a statement (A) of [the Persuader's] receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of [the Persuader's] disbursements of any kind, in connection with such services and the purposes thereof." (29 U.S.C.A. § 433 (b), note 7, *supra*.)

These words—comprehensive, sweeping and plain enough—do not create the problem. The problem comes from § 203(c) (see note 7, *supra*) and more specifically from the phrase "by reason of". This section provides that no person shall be required to file a report covering services "by reason of" such person performing non-persuader labor relations activities. These are defined as the giving or agreeing to give advice to an employer or representing or agreeing to represent an employer before a court, agency or arbitration tribunal, or engaging or agreeing to engage in collective bargaining on behalf of an employer with respect to certain subjects or the negotiation of an agreement or any question arising thereunder.

As the parties square off, the Attorney-litigants recognize that with respect to all labor relations work done during the year for persuader clients a full report must be filed. But with respect to non-persuader clients they contend that *noth-*

*ing* need be reported. The Government, on the other hand, urges that the annual report of one purposefully engaging in a single persuader activity must then report for all labor clients—persuader or non-persuader—all receipts received from each of them on account of labor relation advice or services and disbursements of any kind—persuader or non-persuader—in connection with such services.[8] The Fourth Circuit in *Douglas* adopted the Government's view. In *Fowler*, Part VII, a panel of this Court held against the Government. The full Court thus faces a clear choice.

The Attorney-litigants urge broadly that § 203(c) exempts from any reporting anything pertaining to non-persuader labor activities for non-persuader clients. The Government, on the other hand, contends that the effect of § 203(c), and particularly the phrase "by reason of," [9] is merely to specify those activities or arrangements which will not "trigger" the reporting requirements of subsection (b), even though such activities or arrangements could be construed to have an object of indirectly "persuading" employees. The phrase "by reason of" is then transmuted to read, "no person need file a report *because of* his giving or agreeing to give advice * * *."

As we side with the Fourth Circuit's view, we draw freely on the *Douglas* opinion. The Court first points out that the "annual report must designate the source and amount of 'receipts of any kind from employers on account of labor relations advice or services', § (b) (A)" and then goes on to emphasize that "highly relevant is the reference to 'advice' ", 353 F.2d at 32. Since the definition of a persuader in § 203(b) (1)– (2) [10] does not include one who gives

---

8. The Government stresses that fee reporting encompasses both "advice or services", § 203(b) note 7, *supra*, whereas disbursements are limited to those "in connection with *such services*". We find it unnecessary to evaluate this.

9. In *Fowler*, 372 F.2d 325–326, the Court discussed the competing readings of this phrase.

10. "Every person who pursuant to any agreement or arrangement with an employer undertakes activities where an object thereof is, directly or indirectly—

(1) to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

labor relation "advice," the Court quite naturally emphasized that "the language literally requires a report of payments for other advice * * *". Conversely, the Court went on, unless " * * * 'advice' in [§ 203(c)] embraces independent advice, it has no meaning whatsoever." Here the meaning of "advice" as used in § 203(c) becomes important, and all would agree with the Court that as "the word appears in § (c), it plainly refers to advice apart from the statutory * * *" persuader activities.[11] When that same meaning is needed to give sense or purpose to its use in § 203(b), it leads to the conclusion that disclosure for all labor relation clients is the price the Attorney-persuader must pay if he wishes to engage in those activities. The legislative judgment that one who engages in the persuader business must be subjected to the pressure of revealing publicity is amply justified by the difficulty in distinguishing between those activities that are persuader activities and those that are not, and by the opportunity for misleading concealment of the true nature of such Attorney's work in situations involving intricate corporate conglomerate associates or, equally pressing, industry-wide labor controversies. Behind this judgment, of course, was the congressional conviction that quite without regard to the motives or methods of particular individuals engaging in it, the persuader business was detrimental to good labor relations and the continued public interest. Since a principal object of LMRDA was neutralizing the evils of persuaders, it was quite legitimate and consistent with the Act's main sanction of goldfish-bowl publicity[12] to turn the spotlight on the lawyer who wanted not only to serve clients in labor relations matters encompassed within § 203(c) but who wanted also to wander into the legislatively suspect field of a persuader.[13]

Accepting this reading does not make § 203(c) useless. Rather, sweeping as is § (b), the purpose of § 203(c) was "to make explicit what was already implicit in § 203(b), to guard against misconstruction of § 203(b). * * * and § 203(c) was inserted * * * to remove from the coverage of § 203(b) those grey areas where the giving of advice and participation in legal proceedings and collective bargaining could possibly be characterized as exerting indirect persuasion * * *." *Fowler*, Part VI, 372 F.2d at 330.

Like the Fourth Circuit, we think this reading is supported, if not compelled, by the legislative history[14] of the Act. The distinction between the usual practice of labor relations law and persuader activities was emphasized, and additional stress was placed upon the persuader's responsibilities under the Act, including the duty to report.[15] Very pointed was

---

(2) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding." LMRDA § 203 (b). See notes 2, 7, *supra*.

11. Quotations in this paragraph are found in *Douglas*, 353 F.2d at 32.

12. The "fact [is] that the potent weapon to Congress was flaring publicity." *Fowler*, Part VII, 372 F.2d at 334.

13. This was a legislative judgment, wholly unrelated to notions of professional ethics, the legitimate practice of law, as to which this opinion casts no aspersions. As *Fowler* makes clear, conduct subject to federal regulation under LMRDA is a matter of the congressional legislative structure, not the current reading of what the lawyer may ethically or legitimately do. E.g., 372 F.2d 326, 330–331.

14. As the legislative history is discussed in great detail in *Fowler*, Part V, 372 F.2d 326 *et seq.*, it is unnecessary to review it at length here.

15. See, e.g., the following concerning § 103, the forerunner to § 203(c), which originated in the Kennedy-Ives Bill. This bill passed the Senate but not the House in 1958. S. 3974, 85th Cong., 2d Sess. (1958). The Senate Committee stated: "Section 103(b) requires a labor-relations consultant to file a financial report upon his labor-relations activities if he undertakes to influence or affect

the Senate report concerning the predecessor of § 203(b) and (c) as enacted in 1959. After stating that a persuader would be required to file a detailed report, it graphically contrasted this with the non-persuader attorney:

" * * * An attorney or consultant who *confines himself* to giving legal advice, taking part in collective bargaining and appearing in court or administrative proceedings would not be included among those required to file reports under this subsection [§ (b) ]. Specific exemption for *persons giving this type of advice* is contained in subsection (c) of section 103." [16] (Emphasis added.) And, from the succeeding portion set out in *Fowler*, Part V, it was made doubly clear. The "committee did not intend to have the reporting requirements of the bill apply to attorneys * * * [who] *do not engage* in *activities* of the type listed in section 103(b) [now 203(b) ]." 372 F.2d at 327.[17]

Nor does the single excerpt from the Senate report relied on by the majority in *Fowler*, Part VII, 372 F.2d at 334, require a contrary conclusion. In full context the descriptive phrase "a report covering" does not diminish the persuader's duty to report non-persuader fees and disbursements.[18]

It boils down to this. As long as the attorney limits himself to the activities set forth in § 203(c), he need not report. Engaging in such advice or collective bargaining does not give rise to a duty to report. No report is set in motion "by reason of" his doing those things. What sets the reporting in motion is performing persuader activities. Once that duty arises, § 203(c) does not insulate from reporting the matters in § 203(b) for non-persuader clients.

The upshot is that in affirming the District Court in *Price* we overrule the contrary result in *Fowler*, Part VII.

Affirmed.

DYER, Circuit Judge, with whom GEWIN, COLEMAN, AINSWORTH and GODBOLD, Circuit Judges, join, dissenting:

The majority answers in the affirmative the question whether the "comprehensive, sweeping and plain" [1] language of section 203 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., requires an At-

---

employees in the exercise of the rights guaranteed by the National Labor Relations Act or to provide an employer with paid informers or any agency engaged in the business of violating such rights. *Since attorneys at law* and other responsible labor-relations advisors *do not themselves engage in influencing or affecting employees* in the exercise of their rights under the National Labor Relations Act, an attorney or other consultant who confined himself to giving advice, taking part in collectively bargaining and appearing in court and administrative proceedings nor [sic] would such a consultant be required to report. Although this would be the meaning of the language of sections 103(a) and (b) in any event, a proviso to section 103 (b) guards against misconstruction." S.Rep.No.1684, 85th Cong., 2d Sess., 8–9 (1958). (Emphasis added.)
This is set forth in *Fowler* Part V, 372 F.2d at 327 n. 25, and in *Douglas*, 353 F. 2d at 33.

16. S.Rep.No.187, 86th Cong., 1st Sess. 12 (1959), U.S. Code Cong. & Admin. News

(1959), p. 2328. This too, was quoted in *Fowler*, Part V, 372 F.2d at 327.

17. Quoting S.Rep.No.187, 86th Cong., 1st Sess. 40 (1959) ; U.S. Code Cong. & Admin.News (1959), p. 2356.

18. "Section 103(c) : Provides that no employer nor any other person shall be required to file a report covering the giving of advice by such person to such employer, representing the employer before any court, administrative, [sic] agency or arbitration tribunal, or engaging in collective bargaining on behalf of such employer. The committee did not intend to have the reporting requirements of the bill apply to attorneys and labor relations consultants who perform an important and useful function in contemporary labor relations and *do not engage* in activities of the types listed in section 103(b)."
S.Rep.No.187, 86th Cong., 1st Sess. 41 (1959) ; 1 Leg.Hist. (NLRB) 436.

1. Quotations unaccompanied by cited sources are from the Majority Opinion, *supra*.

torney-persuader to report receipts and disbursements for nonpersuader labor relations advice and service for nonpersuader clients. By narrowly concentrating upon juxtapositions of words and italicizations of bits of legislative history, the majority, along with the Fourth Circuit,[2] the court below, the now-disclosed-dissenter to Part VII of Fowler,[3] and perhaps the stern grammarians, thus accepts the Government's contention that a single "persuader" activity by an Attorney-persuader "triggers" a report for all labor clients. With deference, I suggest that the shots thus triggered are neither necessary nor constitutional. Therefore I dissent.

Preliminarily I note that the purpose of the Act was to publicize persuader activity, not nonpersuader activity. In section 203(b) of the Act, 29 U.S.C.A. § 433(b), persuaders are required to file two reports with the Secretary of Labor, but various exemptions from reporting are provided in other sections, including sections 203(c) and 204, 29 U.S.C.A. §§ 433(c) and 434, which are pertinent here. Section 204 exempts privileged communication between an attorney and his client,[4] while section 203(c) exempts persons from filing a report covering their services "by reason of" advisory or representative services.[5] The entire Act, as should be immediately apparent from the multiplicity of exemptions and protections accorded by the Act,[6] is directed solely at disclosure of persuader activity. Yet the majority, through elaborate analysis of the language and history of section 203(c), concludes that receipts and disbursements for *nonpersuader* legal services must also be reported, with the sources of receipts designated and the purposes of disbursements divulged.

Not only is this strange result reached, a result which the close division of this Court suggests is by no means "compelled", but there are no apparent limitations to it. By the revelation of receipts and disbursements, the "spot light" and "potent weapon" of "glaring", "goldfishbowl publicity" is flashed upon the private and confidential, if not privileged, affairs of necessarily affected innocent persons who chanced to receive advice or services in the area of "labor relations", whatever that is, during the "fiscal year", whenever that is, from an attorney who happened extracurricularly to engage in "persuader activities", whatever they are. It evidently does not matter whether the exposed client had any knowledge of the attorney's persuader activities, nor whether the client received the advice or services before or after the persuader activities, nor whether the advice or services were material, or even relevant, to any persuader activities, nor whether the client even knows what "persuader" activities are. Through a species of guilt by association an innocent pre-persuader client is to be "sanctioned" for having received "labor relations" advice from an Attorney-persuader, with the client's confidential affairs glaringly publicized as the "price, albeit perhaps a high one"[7] which the Attorney-persuader somehow is to pay. The price is indeed wholesale.

2. Douglas v. Wirtz, 4 Cir. 1965, 353 F.2d 30, cert. denied, 1966, 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665.

3. Wirtz v. Fowler, 5 Cir. 1966, 372 F.2d 315, 333 n. 42. *See* Majority Opinion, *supra* at n. 4.

4. Section 204, which for some reason the majority fails to discuss, provides as follows:

   Nothing contained in this chapter shall be construed to require an attorney who is a member in good standing of the bar of any State, to include in any report required to be filed pursuant to the provisions of the chapter any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.

5. Sections 203(b) and (c) are set out in full in the Majority Opinion, *supra*, at n. 7. Other exemptions and protections are contained in the remaining sub-sections of section 203.

6. Id.

7. Wirtz v. Fowler, supra at 333 n. 42.

Thus does the majority interpret the will of Congress, drawing "the conclusion that disclosure for all labor relation clients is the price the Attorney-persuader must pay if he wishes to engage in those activities." Despite the fact that not merely the Attorney-persuader is affected by such disclosure, despite (in fact *because* of) the difficulty in determining what is or is not persuader activity,[8] and despite the fact that involved are the most important and fundamental freedoms—the freedoms of speech and association and the freedom to be secure from unwanted and unwarranted governmental intrusions upon private affairs, the right to be left alone—the majority requires, at the risk of fine and imprisonment,[9] "goldfish-bowl publicity" to be shone on private matters.[10] For reasons supported only by the most circular and unconvincing arguments the majority forces the Attorney-persuader to deliver up to the Government data which the Government itself could not constitutionally discover, much less publicize. Why?

Apart from the legislative history or statutory language of section 203(c), two, or perhaps three, reasons for interpreting the Act to require disclosure of nonpersuader data related to nonpersuader clients have been casually suggested. The first argument made, Wirtz v. Fowler, 5 Cir. 1966, 372 F.2d 315, 334, was that Congress by visiting glaring publicity on all labor clients would indirectly discourage persuader activities by attorneys, since eventually "clients who did not believe in such tactics would retain other counsel to achieve secrecy." *Id.* As there noted, this argument is unconvincing because the absence of limitations in point of time and knowledge tends to preclude indirect deterrence.

The affairs of clients who received advice prior to any persuader activity or of clients without knowledge of the attorney's persuader activity would nonetheless be disclosed under the Government and majority's interpretation.

Another justification advanced is that persuader activity is difficult to distinguish. Yet it has been noted that for the purposes of the present inquiry the question of whether there has been "persuader" activity is not relevant. *Id.* at 330. Also, in view of the criminal penalties attached to nondisclosure in section 209, 29 U.S.C.A. § 439, it would appear that a stricter construction would be more preferable.

A rationalization more suggestive of the Government's underlying motivation is that disclosure of all labor relations information by the Attorney-persuader is calculated to ease the Government's enforcement obligations by limiting "the opportunity for misleading concealment of the true nature of such Attorney's work in situations involving intricate corporate conglomerate associates or, equally pressing, industry-wide labor controversies." Clearly the opportunity for concealment would be lessened, and presumably the Government would be quite willing to force the Attorney-persuader to do some of its work for it. There are, however, three difficulties with this argument.

First, it is, at least in part, circular. The Government wishes this Court to interpret the Act to require nonpersuader activity to be reported so that it can, as here, enforce failures to report nonpersuader activity which the Act should be interperted to require, so failures can be enforced. Obviously this Court should not interpret the Act to require something to be done solely so that failure to

---

8. *See* Majority Opinion at 650.

9. Under section 209 of the Act, 29 U.S.C.A. § 439, very stiff criminal penalties for avoidance of the disclosure requirements are provided. This alone should require strict construction.

10. Financial matters are considered to be confidential, and, for example, banks are

not to divulge them. Peterson v. Idaho First Nat. Bank, 1961, 83 Idaho 578, 367 P.2d 284, 92 A.L.R.2d 891; cf. Zimmerman v. Wilson, 3 Cir. 1936, 81 F.2d 847; United States v. First Nat. Bank, S.D. Ala.1946, 67 F.Supp. 616. The confidentiality of financial affairs will be discussed later in the body of this dissent.

do it results in enforcement. The proper course is to have a valid independent reason for a reporting requirement and then prosecute failures to report under *that*. To a degree that indirectly does occur here, in that having *all* labor relations advice and services required to be reported means that questionable instances will be reported so that, perhaps, some persuader activity will be revealed which would not otherwise have been reported. To the degree that the disclosure of nonpersuader activity aids indirect enforcement of reports of persuader activity, however, the interpretation would be both redundant and unconstitutional.

Initially, it should be recognized that the effect of the interpretation is to require automatic discovery: once an Attorney-persuader reports one instance, all conceivably related activities and a few unrelated activities must be reported. What is "triggered" is an automatic interrogatory, an automatic subpoena. This is so regardless of whether the requested information is related to the violation of any statute, regardless of whether there has been a failure to report any matter which Congress permissibly could require to be reported, regardless of the confidentiality of the matters reported, regardless of the report's tendency to discourage constitutionally protected associational rights and to intrude into areas of privacy, and regardless of whether there is any independent basis for believing a violation of statute or a crime has occurred. In essence, then, it is an irrelevant interrogatory to a party where there has been no lawsuit; a subpoena without requirements of relevancy; a search warrant without probable cause; an interpretation without constitutional support.

It must be emphasized that the rights with which we are here concerned are fundamental First and Fourth Amendment rights. That labor relations employers have the right to speak to attorneys regarding their business labor relations, to associate with attorneys for lawful legal advice, and to have private affairs of a lawful nature protected from governmental intrusion is beyond dispute. That the attorneys as well as the employers enjoy the same rights seems also beyond dispute. That the particular matters, financial affairs including the amounts and sources of receipts and the amounts and purposes of disbursements, are of a confidential nature should be equally clear. And that disclosure by the attorney must necessarily expose and affect the client-employer is just as certain.

It would appear to me that a person's financial affairs are his concern and no one else's absent some other factor. For example, "[a] bank should, as a general policy, consider information received concerning its customers as confidential, which it should not disclose to others without clear justification." 1 Paton's Digest (1940) at 16, Opinion 19-1. (For an excellent discussion of privacy in financial matters see the opinion of Judge Swann in Milohnich v. First Nat'l Bank, Fla.App. 1969, 224 So.2d 759 [No. 68-1025, May, 1969]; *see also* Peterson v. Idaho First Nat. Bank, 1961, 83 Idaho 578, 367 P.2d 284, 92 A.L.R.2d 891.) To inquire about such matters absent some governmental interest would seem to fall quite clearly within the Fourth Amendment's protection of the "right of the people to be secure in their * * * papers and effects." Implicit in that Amendment's prohibition against a search warrant issuing "but upon probable cause" is the constitutional assumption that generally the affairs of private citizens are of no governmental concern. Involved are basic associational rights, including the "right of general privacy, a right at times conspicuously absent in this, 'the land of the free.'" Note, 23 U.Miami L.Rev. 231, 233 (1968).

I disagree that we are here concerned with a mere "legislative judgment, wholly unrelated to notions of professional ethics, the legitimate practice of law, as to which [the majority's] opinion casts no aspersions." Majority Opinion, *supra* at n. 13. By examining the *effect* of the majority's disclosure requirement,

both on innocent clients and innocent attorneys, it is clear that we are here dealing with "the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." Olmstead v. United States, 1928, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944. (Brandeis, J., dissenting). *See Generally* 31 Law & Contemporary Problems 251–435 (1966). If it *were* the legislative judgment to impinge upon this right in an attempt indirectly to do what the Government could not do directly, then it was not only bad, it was unconstitutional. What the majority ignores is the very important fact that for aught that appears from the record, *there has been no failure to report any persuader activity* which, as initially noted, is what the Act was passed to reveal.

Where an attorney specializes in labor law, the effect of the majority's interpretation is to authorize a pro forma search of virtually all his financial data following lawful activity.

> Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire, and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. * * * The interruption of business, the possible revelation of trade secrets, and the expense that compliance with the [Secretary's] wholesale demand would cause are the least considerations. It is contrary to the first principles of justice to allow a search through all [of a private citizen's] records, *relevant or irrelevant*, in the hope that something will turn up. * * *

Federal Trade Comm. v. American Tobacco Co., 1924, 264 U.S. 298, 305–306, 44 S.Ct. 336, 337, 68 L.Ed. 696 (emphasis added). I am unable to distinguish any meaningful difference between the disclosure requirement the majority here reads into the Act and a subpoena or an interrogatory or other forms of discovery. Yet these are authorized only following the existence of facts indicating a statute has been or is about to be violated, and any violation of the statute here is not due to activity Congress lawfully could proscribe.

For some reason the majority does not here discuss United States v. Harriss, 1954, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989, which in my view indicates the manner in which this statute should be construed. In *Harriss* the Supreme Court intrepreted the Federal Regulation of Lobbying Act, 2 U.S.C.A. §§ 261–270, under which the appellees had been charged "with failure to report the solicitation and receipt of *contributions to influence the passage of legislation*" and "expenditures having the *same single purpose.*" *Id.* at 615, 74 S.Ct. at 810 (emphasis added). (The Lobbying Act and the Disclosure Act are analogous.) The Court in *Harriss* was not faced with precisely the same question as *sub judice* because it construed the Lobbying Act so as to avoid it, using very significant language. After holding that persons under the Lobbying Act need only report "contributions and expenditures *having the purpose of attempting to influence legislation* through direct communication with Congress," *id.* at 623, 74 S.Ct. at 815 (emphasis added), the Court noted that as "[t]hus construed [the Act did] not violate the freedoms guaranteed by the First Amendment—freedom to speak, publish, and petition the Government." *Id.* at 625, 74 S.Ct. at 815. The Court noted that, as construed, the Act

> has merely provided for a *modicum* of information from those who for hire attempt to influence legislation or who collect or spend funds for that purpose. It wants only to know who is being hired, who is putting up the money, and how much. *Id.* (emphasis added).

The Court went on to state that under the particular circumstances, "Congress, at least within the bounds of the Act as [the Court] construed it, is not constitutionally forbidden to require the *disclosure of lobbying activities.*" *Id.* But it noted that its construction was based

on a self-protective theory and that Congress had used its power of self-protection *"in a manner restricted to its appropriate end."* Even in such a case as *Harriss,* however, where the Supreme Court took pains to construe the Act in admitted efforts to save its constitutional validity, the Court noted that its decision was calculated to *avoid* indirect restraints on First Amendment freedoms. Due to the Court's limiting efforts, the restraints there hypothesized were whittled down to unreasonable remoteness, *id.* at 626, 74 S.Ct. 808, but even then there were vigorous dissents.[11] In the case *sub judice,* where fears by innocent clients are as immediate as they are apparent, rather than construing the statute so as to eliminate them the majority construes the statute so as to cause them.

While the rights of privacy, speech and association involved here are relatively apparent, the case has another aspect. By failing to place knowledge or time limitations upon the disclosure the effect upon pre-persuader clients is difficult to justify on any theory of waiver. This failing has overtones of Fifth Amendment Due Process.[12]

It is by now apparent that I perceive grave constitutional deficiencies in the majority's interpretation of the Disclosure Act. I cannot justify the immediate effect of the majority's interpretation upon any theory of indirect deterrence, vagueness of language, or prevention of concealment, since the first need not occur, the second will not be cured, and the third is provided for in the enforcement sections of the Act and by normal rules of discovery. The constitutional difficulties inherent in the majority's interpretation can easily be, as in *Harriss, supra,* construed out of the Act under sections 203(c) or 204[13] due to the statute's lack of clear language or pedigree. This approach was taken in *Fowler,* Part VII, *supra,* 372 F.2d at 333, and its nuances need not be iterated. To construe the Act as requiring disclosure only regarding an attorney's persuader clients is to leave the Act directed solely at activity "by so-called 'labor relation consultants,'" *Fowler, supra* at 324. That is where the spotlight should shine.

I would reverse the District Court in *Price* and affirm *Fowler,* Part VII.

---

11. The dissents were primarily based on the problem of vagueness at issue in the case. But Justice Douglas, with whom Justice Black concurred, felt it important to note that since the legislation was in the domain of the First Amendment the Court should be chary of the statute's purview. Justice Douglas felt it necessary to "mention the First Amendment to emphasize why statutes touching this field should be 'narrowly drawn to prevent the supposed evil' and not be cast in such vague and indefinite terms as to cast a cloud on the exercise of constitutional rights." 347 U.S. at 632, 74 S.Ct. at 819 (citations omitted).

12. Additionally, to abrogate the pre-persuader client's rights to the privacy of his financial matters and his relationships with his attorney through forcing the attorney to comply with the disclosure requirements is by analogy impermissible under Fourth Amendment standards. Whether or not it would be possible to do so, the attorney could not "waive" his client's rights if the purported waiver were the result of implied coercion. *Cf.* Amos v. United States, 1921, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654. Compliance with a statutory duty involving criminal penalties is impliedly coercive since it does not contain the elements of voluntariness. *Cf.* Buck v. Kuykendall, 1925, 267 U.S. 307, 316–317, 45 S.Ct. 324, 69 L.Ed. 623; 16 Am.Jur.2d, Constitutional Law § 136.

13. See note 4, *supra;* and Majority Opinion, *supra* at n. 7.