**MASTER PRINTERS ASSOCIATION, A DIVISION OF PRINTING INDUSTRY OF ILLINOIS, Defendant-Appellant,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee.**

**No. 82–1459.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1982.

Decided Jan. 31, 1983.

Rehearing and Rehearing En Banc Denied May 12, 1983.

Maurice Baskin, Francis Thomas Coleman, Jr., Venable, Baetjer, Howard & Civiletti, Washington, D.C., for defendant-appellant.

Elaine Kaplan, Div. of Sp. Appellate and Supreme Court Litigation, Washington, D.C., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and TIMBERS,[*] Senior Circuit Judge.

BAUER, Circuit Judge.

The Secretary of Labor initiated this action against Master Printers Association (MPA), alleging that MPA violated section 203 of the Labor Management and Disclosure Act, 29 U.S.C. § 433, by failing to file complete reports of its labor relations activity. MPA defended on the grounds that the Secretary's reading of section 203's disclosure requirements was overly broad and contrary to the legislative history, the statutory scheme and the plain language of the statute. It also contended that by interpreting section 203 to require complete disclosure of persuader and non-persuader labor relations activity whenever a labor consultant engaged in any persuader activity violated the constitutional rights of MPA and its members to freedom of speech, freedom of association, freedom from unreasonable searches and seizures, and due process.

The parties filed cross motions for summary judgment. The district court granted the Secretary's motion for summary judgment and denied MPA's motion for summary judgment, holding that section 203 required MPA to file the complete reports of all its labor relations activity for any year in which it engaged in some persuader activity. In rendering its memorandum opinion the district court thoroughly and carefully analyzed all the issues raised in this appeal. Accordingly, we affirm and adopt the excellent opinion of the district court, which is reported at 532 F.Supp. 1140.

PELL, Circuit Judge, dissenting.

The memorandum opinion of the district court, by virtue of adoption by the majority of the panel hearing this appeal, is now the opinion of this court. Because I regard the district court's opinion, notwithstanding the thorough and objective analysis it provides in its some 34 pages, to have reached an incorrect result I respectfully dissent.

As a beginning point, it appears important to me to focus on the undisputed facts. One is that the Master Printers Association (Association) is comprised of approximately 800 printing shops all of which are non-union plants, which status is probably a particularly uneasy one in the traditionally well organized craft of printing. In 1976 the former executive director of the Association delivered on three occasions speeches to employees of three different member employers. The Secretary of Labor determined that these three speeches constituted instances of "persuader" activity under Section 203 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 433(b) (the Act). The Secretary's interest in the Association did not stop there, however, as the Secretary demanded reports under the Act not only for the three employers in question but for the other some 797 members; members for whom no "persuader" services had been rendered. In effect and in actuality, the Secretary has sought to compel the Association to disclose its entire membership list and all monies received and disbursed in connection with the Association's non-persuading labor relations advice and services on behalf of all of its members. It is also important to focus on the fact that the Secretary on this appeal concedes that if the three speeches had not been made the Association would not have had to furnish the information now demanded.

The Secretary on this appeal and the district court in its opinion rely heavily on two cases from other circuits, *Douglas v. Wirtz*, 353 F.2d 30 (4th Cir.1965), *cert. de-*

---

[*] The Honorable William H. Timbers, Senior Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

*nied,* 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665 (1966); and *Price v. Wirtz,* 412 F.2d 647 (5th Cir.1969) (en banc). Those two cases involved attorneys who gave advice on labor relations matters but who had gone across the line into direct contact with employees to have become persuaders within the meaning of the Act. *Price,* the later case, even in the limited sphere of contacts of attorneys as contrasted to the broad relationship here involved, came from a closely divided 5th Circuit. The fact that there was a majority opinion joined in by six judges and a strong dissent by Judge Dyer, joined in by Judges Gewin, Coleman, Ainsworth and Godbold, emphasizes the perilous voyage into the shoals of constitutional violation inherent in the judicial gloss put on the Act by the present majority opinion. An important additional element, and one differing from *Douglas* and *Price,* exists in the present case and that is the associational aspect of this membership organization. Thus, in the present case, it appears to me if the Congress had meant what the Secretary, district court, and the majority opinion of this court say it meant, not only would there have been an infringement of the Association's right of free speech and due process, but an infringement on the First Amendment right of free association.

The pertinent parts of Section 203 of the Act involved here read as follows:

(b) . . .

Every such person [who undertakes persuader activity] shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

(c) Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

I find it difficult to read (c) other than as a limitation, specifying the boundaries of the report required in (b) as those instances where only those employers to whom or at which persuader activities were provided and eliminating from the scope of (b) those persons who were merely the recipient of advice such as that rendered by the Association in this case. Nevertheless, the district court, accepting what I regard as the weird construction placed on the Act by the Secretary, refers to this as being the clear expression of Congressional intent. Yet elsewhere in its opinion, the district court candidly states that it is "apparent from reading the act that the language of paragraphs (b) and (c) requires reconciliation." The district court then follows with a quotation, which apparently it approves, from Aaron, *The Labor Management Reporting and Disclosure Act of 1959,* 73 Harv.L.Rev. 851, 891 (1960):

Read literally, Section 203(b) seems to compel [the] conclusion [that one persuader activity triggers the requirement of 100% reporting including non-persuader activities]; but the opposite conclusion is indicated by section 203(c), which specifically states that consultants need not report the mere giving of advice to employers, or the representation of employers in an arbitration, administrative, or judicial proceeding. This is another example of the *ambiguities* produced by the inartistic draftsmanship which characterizes much of the statute. (Emphasis added.)

I have a conceptual difficulty in equating clear expression of "Congressional intent" with "ambiguities." Further, the district court while referring to the "potentially confusing language" of the Act then eliminates the potentiality by finding persuasively that the exemption was included in 203(c) merely "to guard against misconstruction." That Congress should legislate in the form of limiting Section 203(c) for the purpose of guarding against misconstruction of Section 203(b) by clarifying what it had just said is scarcely flattering to the legislative draftsmanship.

We have been provided on this appeal with extensive references to the utterances of the members of Congress in connection with the evolution of the Act, including references to its predecessor, pre-cursor, earlier enactments, and, as the district court correctly pointed out, both parties take the position that "the legislative history accompanying the act supports their view." In my examination of the cited legislative history, I agree that both parties could find supportive statements. From my reading, however, this legislative history is valueless for any clear and explicit statement to the effect that one who engaged in a persuader activity as to one employer of labor thereby opens its books as to all other employers "as to whom it has engaged only in advice without the direct persuader activity."

In my opinion, the Association has reconciled the inconsistent two paragraphs so as to give meaning to both sections, which position I think this court would have been well advised to have taken. The Association contends that the "advice" which subsection (c) excludes is that advice given to an employer for whom no persuasion activities are also performed. In other words, if Consultant A has agreements with Employer X to provide advice and persuasion, with Employer Y to provide only advice and with Employer Z to provide persuasion, it would have to include in its annual report all of its receipts and disbursements for X and Z and nothing at all for Y. Advice becomes reportable only when it is done as part of a persuasion agreement or for an employer for whom a consultant also does persuasion.

This construction not only avoids the constitutional problems inherent in the approach by the Secretary and adopted by the district court but gives full effect to Section 203 in its entirety. The district court in its extended opinion emphasizes the danger posed by middlemen in the labor relations field, a strong connection between corruption in the labor field and the activities of management persuaders, and that Congress viewed management persuaders as inherently suspect and their activities subject to abuse in an extremely sensitive field. In the district court's opinion the Congressional concern with persuader activities apparently acquired, at least in a majority of the Congressional minds, an evil connotation. Leaving aside the possibly questionable conclusion that employees in today's sophisticated labor market would be more likely to be influenced improperly by direct contact from an outside source than they would be by activities of their own management, the fact remains that under the Act, as construed by the Secretary and not negated by the district court's opinion, the Association could channel information and advice to its some 800 members who could then use that advice and information as their own and in the absence of direct contact between the Association and the employees there would be no duty under the Act to make the full disclosure with which the Association is now confronted.

The construction of the Act advanced by the Association, and the one which I believe is a proper one, is one which avoids the distinct likelihood of constitutional infirmity. The five judge dissenting opinion in *Price v. Wirtz, supra,* adverted to the desirability of avoiding constitutional difficulties inherent in the majority's interpretation by a different construction of the Act which would have precluded the disclosure contended for by the Secretary. 412 F.2d at 656. Again it must be borne in mind that the constitutional issues which the dissenters found to constitute grave deficiencies in the majority opinion did not include the important additional one of freedom of association which exists in the present case.

The Supreme Court very recently reemphasized the canon of statutory construction which, in my opinion, is brought into play by the grave constitutional deficiencies existing in the majority opinion. In *United States v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) the Court, after considering the potentiality of constitutional violations in the recently adopted Bankruptcy Act, stated that it considered the statutory question because of the

> " 'cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided.' " *Lorillard v. Pons,* 434 U.S. 575, 577 [, 98 S.Ct. 866, 868, 55 L.Ed.2d 40] (1978), quoting *Crowell v. Benson,* 285 U.S. 22, 62 [, 52 S.Ct. 285, 296, 76 L.Ed. 598] (1932).

*Id.* 103 S.Ct. at 412. Applying this "cardinal principle" of statutory construction, I can reach only one conclusion and that is that all of the language of the two subparagraphs be given effect in the manner set out earlier herein; the construction given by the district court, and adopted by this court, not only renders meaningless some of the language in the subsections but further renders them subject to constitutional attack.

In connection with the chilling effect of the complete disclosure, I am not unmindful that the district court expressed skepticism of the "fears" expressed by the defendants. The court followed this statement of skepticism by stating that even accepting their allegations as true, it did not believe that those allegations made out a claim under the First Amendment. The Court's rationale apparently was that governmental interests were sufficiently important to outweigh the possibility of infringement. But I search in vain for any demonstration of governmental interest in requiring the disclosure of the membership of the Association when 797 members of the Association have only been potential recipients of advice, when there would have been no disclosure required by the statute if all 800 had received only advice.

Further, unfortunately, the district court did not accept the allegations as true. Affidavits were submitted showing that the order of disclosure did indeed have a chilling effect. Under any circumstances summary judgment was inappropriate. At the very least, there should have been a trial on the matter of whether under the particular labor relations situation here involved there was a chilling impact on the right of free association.

It appears to me, however, on the basis of the affidavits that summary judgment in favor of the Association was appropriate. It takes no effort of the imagination to conceive what capital Union organizers could make of the disclosure of the membership and their payments to the Association: "With a union shop this money which is now paid to an outsider would be coming your way in the form of increased wages." This would be only one example of the use to which the information could be put. As I noted earlier herein, trade unions have been particularly traditionally associated with the printing craft. It is an uneasy situation for the printer wishing to maintain a non-union shop, which it is privileged to do, if a majority of the employees do not desire unionization. I note also the difficulty of getting affidavits from the member-employers on the chilling aspect as the very execution and filing would result in an indirect disclosure of that which is now sought directly.

The district court itself recognized that "Congress has specifically provided, and the Supreme Court has held, that employers in the labor relations field are protected under the constitution." I am not aware that the First Amendment right of free association would be treated any differently. The district court quotes approvingly from *Buckley v. Valeo,* 424 U.S. 1, 64–65, 96 S.Ct. 612, 656–657, 46 L.Ed.2d 659 (1976), that there be "relevant correlation" or "substantial relations" between the governmental interests and the information required to be disclosed. At the risk of being repetitive, I again search in vain for any substantial relationship between governmental interest

and the disclosure of the membership data of the entire Association.

The Secretary concedes that if the Association had only engaged in one act of directly speaking to employees of one member of the Association, full disclosure of the other approximately 799 members would have been demanded by the Secretary. On the other hand, if there had been no persuader activity whatsoever there would have been no demand. I cannot regard the result as being other than not only unwarranted but peculiar.

Finally, the district court opines that the act would be less than effective if it permitted the targets of the publicity to be entirely free from public scrutiny where they are able to couch their function as "advice" rather than persuasion. This expression of alarm might have been more persuasive if it were not for the fact that the so-called targets of publicity are concededly entirely free of public scrutiny where they impart information in the form of advice rather than persuasion. The Secretary does not contend otherwise.