Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Appellee,

v.

The ROSE LAW FIRM, Appellant.

No. 84–1863.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1985.

Decided July 22, 1985.

---

Jim Hunter Birch, Little Rock, Ark., for appellant.

Romino Salazar, Dept. of Labor, Washington, D.C., for appellee.

Before BRIGHT, Senior Circuit Judge, and ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

This case has its origins in an organizing drive by the United Brotherhood of Carpenters and Joiners of America at the Monark Boat Company plant in Monticello, Arkansas. During the drive, Monark hired an attorney from the Rose Law Firm to conduct discussions with Monark employees. The Department of Labor subsequently contacted the Rose Law Firm and asked the firm to file certain labor consultant reporting forms as required by section 203(b) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) (codified at 29 U.S.C. § 433(b)).[1] LMRDA

---

1. Section 203(b) reads as follows:

Every person who pursuant to any agreement or arrangement with an employer undertakes activities where an object thereof is, directly or indirectly—

(1) to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

(2) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

shall file within thirty days after entering into such agreement or arrangement a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the name under which such person is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement. Every such person shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

29 U.S.C. § 433(b).

§ 203(c) (codified at 29 U.S.C. § 433(c)) qualifies the required disclosure.[2]

The basic controversy between the parties in the present case concerns the extent of the disclosure mandated by § 203 of the LMRDA. The Department of Labor insists that once any person, pursuant to any agreement or arrangement with an employer, engages in persuader activity, § 203 obligates that person to file within thirty days after entering into the agreement or arrangement a report detailing the terms and conditions thereof, and also to file an annual report of its receipts from and disbursements on behalf of every employer for whom that person performed any service or gave any advice on account of labor relations. The Rose Law Firm agrees with the Department insofar as acknowledging that the disclosure requirement of § 203 is triggered by engaging in persuader activity, and does not dispute the Department's assessment of the thirty-day report. The firm argues, however, that the annual disclosure mandated by § 203 need include only receipts and disbursements relating to services performed for and advice given to those employers for whom persuader activity is performed.

Pursuant to its view of the annual disclosure required by § 203, the Rose Law Firm disclosed to the Department only its receipts and disbursements relating to labor services it provided to Monark, the sole employer for whom the firm had engaged in persuader activity. This disclosure was rejected by the Department as incomplete. When the firm refused to disclose its receipts and disbursements on account of clients for whom it had not performed any persuader activity, the Department sued the firm in the United States District Court for the Eastern District of Arkansas to compel what it regards as complete disclosure under § 203. The District Court granted the relief sought by the Department.

■ The Rose Law Firm contends that the District Court erred in granting the relief sought by the Department, and argues, as it did in the District Court, that its interpretation of the disclosure required by § 203 is correct for three reasons. First, the firm contends that the intent of Congress in enacting the LMRDA was to require the disclosure of receipts and disbursements only with regard to labor relations services provided to employers for whom persuader activity is performed. Second, it asserts that the Department's interpretation of the disclosure provisions impermissibly requires the disclosure of privileged attorney-client information. Finally, it asserts that the Department's interpretation of the disclosure provisions unduly infringes on the First and Fourth Amendment rights of the firm and of its clients. Because we agree that § 203 of the LMRDA does not require the annual report submitted thereunder to include receipts and disbursements on account of labor relations services and advice rendered to employers for whom the person reporting has not performed persuader activities, we reverse the judgment of the District Court. In view of this result, we need not reach the other issues raised by the Rose Law Firm.[3]

---

**2.** Section 203(c) reads as follows:

Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any questions arising thereunder.

29 U.S.C. § 433(c).

**3.** The language of §§ 203(b) and (c) is also susceptible to be read as requiring a labor relations consultant to report only receipts and disbursements on account of persuader activity performed for an employer, and not receipts and disbursements on account of ordinary labor relations advice and services to that employer. However, the Rose Law Firm does not urge such a narrow reading of § 203 on us, and it apparently has reported to the Department of Labor all receipts and disbursements on account of labor relations advice and services on behalf of Monark, the employer for whom it

## I.

The issue before this Court is one of first impression in this Circuit. At present, decisions in four other Circuits support the position here advocated by the Department. *See Humphreys, Hutcheson and Moseley v. Donovan,* 755 F.2d 1211 (6th Cir.1985); *Master Printers Association v. Donovan,* 699 F.2d 370 (7th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *Price v. Wirtz,* 412 F.2d 647 (5th Cir.1969) (en banc); *Douglas v. Wirtz,* 353 F.2d 30 (4th Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665 (1966). We shall discuss each of these decisions, but before doing so we offer a brief overview of the legislative history of the statutory language here in issue, with the thought that it will make what follows more readily understandable.

Much of the language of the consultant reporting provisions found in §§ 203(b) and (c) of the LMRDA appeared originally as § 103(b) of the Kennedy-Ives bill, S. 3974, 85th Cong., 2d Sess. (1958), which bill passed the Senate, but failed to pass the House. *See* Beaird, *Reporting Requirements for Employers and Labor Relations Consultants in the Labor-Management Reporting and Disclosure Act of 1959,* 53 Geo.L.J. 267, 272–73 (1965). The language reappeared in altered form as §§ 103(b) and (c) of the Kennedy-Ervin bill, S. 505, 86th Cong., 1st Sess. (1959), and remained §§ 103(b) and (c) when, following amendment in the Senate Committee on Labor and Public Welfare, the Kennedy-Ervin bill reemerged as S. 1555, which bill was eventually passed by the Senate. Later, after the House had passed its own labor bill (H.R. 8342, 86th Cong., 1st Sess. (1959)), which differed substantially from S. 1555 in its consultant reporting requirements (H.R. 8342 §§ 203(b) and (c)), the Conference Committee of the House and Senate voted to substitute the text of §§ 103(b) and (c) of S. 1555 for the text of §§ 203(b) and (c) of the House bills. That

language taken from S. 1555 thus became §§ 203(b) and (c) of the LMRDA. *See* Aaron, *The Labor-Management Reporting and Disclosure Act of 1959,* 73 Harv.L. Rev. 851, 853–56 (1960).

Section 203(b) creates a broad duty of disclosure on the part of persons engaging in persuader activity. Taken alone and read literally, it fully supports the Department's position in this case. Section 203(c), however, appears sharply to limit the duty created by § 203(b), but the limiting extent of § 203(c) is not clearly determinable from a reading of the statute. Our task is to reconcile these two apparently conflicting provisions in a way that will be faithful to the intent of Congress, as best we can ascertain that intent.

### A.

In *Douglas v. Wirtz,* the Fourth Circuit had little difficulty reconciling the apparent conflict between §§ 203(b) and (c). Citing to S.Rep. No. 187, 86th Cong., 1st Sess. 12, *reprinted in* 1959 U.S.Code Cong. & Ad. News 2318, the court held that "§ [203](b) encompassed not only an annual report of receipts from persuasion activities but all receipts 'on account of labor relations advice.'" 353 F.2d at 32 (quoting S. 3974 § 103(b); S. 1555 § 103(b)). The court found support for this result in S.Rep. No. 1684, 85th Cong., 2d Sess. 8–9 (1958). S.Rep. No. 1684 relates to the Kennedy-Ives bill (a predecessor to the LMRDA) and states that the language that ultimately became § 203(c) of the LMRDA was intended to serve as a proviso to the part of the bill that became § 203(b) so as to guard against misconstruction. *See* 353 F.2d at 33. The court found further support for its conclusion in the fact that both S.Rep. No. 1684 to the Kennedy-Ives bill and S.Rep. No. 187 to S. 1555 indicate that subsection (c) contains a specific exemption stating that an attorney or consultant who confines himself to giving advice, taking part in collective bargaining, and appearing in

---

performed persuader activity. Thus, we need not, and do not, here consider the merits of

such a narrow reading of § 203.

court or administrative proceedings would not be among those required to file reports under subsection (b). *Id.* District Judge Lewis, sitting by designation, dissented without opinion.

### B.

In *Price v. Wirtz,* the Fifth Circuit en banc drew heavily on the Fourth Circuit's opinion in *Douglas* in upholding the Department of Labor's interpretation of § 203, relying primarily on the view of the Fourth Circuit that the purpose of § 203(c) was merely to make the implicit explicit: that " '[a]n attorney or consultant who *confines himself* to giving legal advice ... would not be included among those required to file reports under [subsection (b) ].' " 412 F.2d at 651 (quoting *Wirtz v. Fowler,* 372 F.2d 315, 327 (5th Cir.1966)).

Judge Dyer, who was joined by four other judges, authored a dissent from the holding of the majority in *Price v. Wirtz. See* 412 F.2d at 651–56. The dissent disagreed with the majority's reading of the legislative history. While it did not take issue with the probative value of the specific excerpts from the legislative history relied on by the majority, the dissent did believe that reliance on such excerpts was not persuasive, especially when the legislative history as a whole tended to show that the primary thrust and purpose of the LMRDA was to publicize persuader activi-

ty. The dissent saw little justification for the Department's wish to have the LMRDA interpreted to require the reporting by persuaders of non-persuader activity. The dissent also perceived serious constitutional difficulties with the majority's interpretation of § 203, and would have construed the disclosure requirements of that section more narrowly so as to avoid the constitutional issues raised by a broad interpretation.

### C.

In *Master Printers Association v. Donovan,* a panel of the Seventh Circuit by a two-to-one vote also upheld the Department's interpretation of § 203, adopting the opinion of the district court in *Donovan v. Master Printers Association,* 532 F.Supp. 1140 (N.D.Ill.1981). In the first part of its opinion, the district court attempted to assess the tone of the congressional hearings regarding the passage of the LMRDA, and noted that Congress "believed [that outside consultants] frequently engaged in practices of questionable legality." *Id.* at 1142. Citing extensively from S.Rep. No. 187, the district court noted that the route taken by Congress in order to control such practices was to legislate the exposure of the activity of persuaders to public scrutiny, whether or not such activity was illegal.[4] *See* 532 F.Supp. at 1143, 1150.

---

4. We note that the district court in *Master Printers* correctly observed that Congress deliberately chose by passing the LMRDA to require the reporting by labor consultants of activity that is not illegal to guard against the chance that prohibited activity would escape unreported. We disagree, however, with the implication left by the district court's opinion that the debate in Congress concerned whether the LMRDA required the reporting of only persuader activity, or whether it required the reporting of all receipts and disbursements on account of all labor relations services performed.

A close reading of the legislative history supports a different analysis. As indicated by the district court, the chief evil against which Congress hoped to intervene through use of the consultant reporting requirement was the use of labor consultants who were involved in bribery, corruption and unfair labor practices. *See* 532 F.Supp. at 1149; *see also* S.Rep. No. 187, 1959

U.S.Code Cong. & Ad.News at 2327; United States Department of Labor, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959* at 617–18 [hereinafter cited as Leg.Hist. (Labor) ]. S.Rep. No. 187 noted that the reporting requirements of § 203 went beyond the scope of those activities that were illegal, in the hope that broader reporting requirements would facilitate the apprehension of those labor consultants who engaged in illegal activities. 1959 U.S.Code Cong. & Ad.News at 2328.

A number of senators opposed such broad reporting requirements; they would have required the reporting only of activities "designed to interfere with, restrain, or coerce employees in the exercise of their statutory rights...." *Id.* at 2388. Senator Goldwater particularly "fail[ed] to see how any legitimate legislative purpose [could] be served" by the provision requiring employers and consultants to report

The district court in *Master Printers* found two pieces of evidence particularly persuasive in interpreting § 203. First, the court noted, as had the Fourth Circuit in *Douglas v. Wirtz*, that S.Rep. No. 1684 referred to the last paragraph of § 103(b) of the Kennedy-Ives bill (which is similar to § 203(c) of the LMRDA) as a proviso designed merely to make the implicit explicit. *See* 532 F.Supp. at 1145–46. Second, the court quoted Senator Goldwater's description of the reports required by § 203(b) once the duty to report is incurred:

First. File a report with the Secretary within 30 days of entering into the agreement or arrangement giving all details concerning it.

Second. File annually with the Secretary for the preceding fiscal year if he received *any* payments pursuant to an agreement or arrangement, a report setting forth *all* receipts from *all* employers, and the sources thereof, on account of labor relations advice or services, as well as any disbursements and their purposes in connection with such services....

persuader activity consisting purely of legitimate employer speech "which is protected by the Taft-Hartley Act—and in all probability by the Constitution...." Leg.Hist. (Labor) at 555. The House essentially concurred in the Senate minority view, and passed a bill that would have required only the reporting by consultants of "activities designed to interfere with, coerce, and restrain employers in the exercise of their rights...." H.R.Rep. No. 741, 86th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.Code Cong. & Ad.News at 2435. (H.R.Rep. No. 741 was issued in connection with H.R. 8342 before an amendment completely substituted the text of H.R. 8400, 86th Cong., 1st Sess. (1959) for the text of H.R. 8342. *See* National Labor Relations Board, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959* at x–xi. The consultant reporting requirements found in § 203 of H.R. 8400 were, however, identical to those in H.R. 8342.) Senator Goldwater, commenting on the differences between the consultant reporting requirements contained in the House and Senate versions of the bill, noted:

The reporting requirements for employers and labor relations consultants in the House bill are geared to payments designed to interfere with, restrain, or coerce employees in the exercise of their right to organize and bargain collectively while the reporting requirements

*Id.* at 1146–47 (quoting Leg.Hist. (Labor) at 624).

Judge Pell dissented from the Seventh Circuit's affirmance of the decision of the district court. In his view, the only way to give meaning to both subsections (b) and (c) of § 203 was to read them as urged by the appellant in the case before him (and as urged here by the Rose Law Firm). Only this reading would avoid "the constitutional problems inherent in the approach [advocated] by the Secretary [of Labor]." 699 F.2d at 373.

### D.

In *Humphreys, Hutcheson and Moseley v. Donovan*, the Sixth Circuit also upheld the Department's interpretation of § 203. The court essentially agreed with the view expressed by the Fifth Circuit in *Price v. Wirtz* that § 203(b) exposes a persuader to a reporting requirement as to all labor relations clients and that § 203(c), being merely a clarification of the reporting requirement of § 203(b), does not limit that requirement. *See* 755 F.2d at 1215–16.

of the Senate bill (sec. 203) are geared to payments designed to persuade employees in the exercise of these rights. Leg.Hist. (Labor) at 613. (Senator Goldwater originally opposed the Senate version of the LMRDA, but supported the bill as it emerged from the Conference Committee. *See* 532 F.Supp. at 1147 n. 9.)

As noted in *Wirtz v. Fowler*, "the Senate approach to the problem was accepted and that of the House rejected." 372 F.2d at 329. But as demonstrated above, the reporting requirement that was rejected was the requirement that only coercive arrangements be reported; while it is clear that Congress intended the disclosure of some activity that was not illegal, it is equally apparent that Congress considered some forms of persuader activity to be perfectly legitimate. Given the parameters of the debate in Congress over the requirement that the LMRDA requires the reporting of activity that is legitimate, we are of the view that the references in the legislative history to the effect that engaging in persuader activity compels a persuader to disclose legitimate activity relate in part to disclosure of persuader activity that is not illegal and in part to disclosure of some degree of non-persuader activity, but certainly do not indicate that all other labor relations services and advice performed by a persuader must be reported.

## II.

We note initially that a reading of the language of §§ 203(b) and (c) does not plainly indicate which interpretation here advocated is to be preferred.[5] As one commentator has noted:

There seems to be some confusion ... concerning whether a consultant who has an agreement with any one employer to persuade employees or to furnish information must then include in his annual report receipts from, and disbursements on behalf of, all other employers for whom he has performed labor-relations services that would otherwise not have to be reported. Read literally, section 203(b) seems to compel that conclusion; but the opposite conclusion is indicated by section 203(c), which specifically states that consultants need not report the mere giving of advice to employers, or the representation of employers in an arbitration, administrative, or judicial proceeding. This is another example of the ambiguities produced by the inartistic draftsmanship which characterizes much of the statute.

*See* Aaron, *The Labor-Management Reporting and Disclosure Act of 1959,* 73 Harv.L.Rev. at 891 (1960). We turn, therefore, to the history of § 203 of the LMRDA to determine what it means.

The first version of the language that ultimately was to become §§ 203(b) and (c) of the LMRDA appeared in § 103(b) of the Kennedy-Ives bill (S. 3974),[6] which never became law. The accompanying senate report indicates that the proviso in § 103(b) of the Kennedy-Ives bill (which is similar to § 203(c) of the LMRDA) was there simply to guard against misconstruction:

Section 103(b) requires a labor-relations consultant to file a financial report upon his labor-relations activities if he undertakes to influence or affect employees in the exercise of the rights guaranteed by the National Labor Relations Act or to provide an employer with paid informers or any agency engaged in the business of violating such rights. Since attorneys at law and other responsible labor-relations advisers do not themselves engage in influencing or affecting employees in the exercise of their rights

**5.** We appreciate, however, that "plain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion,* — U.S. —, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985). In *Douglas v. Wirtz,* 232 F.Supp. 348 (M.D.N.C.1964), for example, "[b]oth parties urge[d] that [§§ 203(b) and (c)] have a clear meaning, each party contending that there is little, if any, ambiguity." *Id.* at 351.

**6.** Section 103(b) reads as follows:

Every person engaged in providing labor relations consultant service to an employer engaged in an industry affecting commerce pursuant to any agreement or arrangement under which such consultant undertakes—

(A) to influence or affect employees in the exercise of their rights guaranteed by section 7 of the National Labor Relations Act, as amended, or by the Railway Labor Act, as amended, or

(B) to provide an employer involved in a labor dispute with the services of paid informants or investigators, or any agency or instrumentality engaged in the business of interfering with, restraining, or coercing employees in the exercise of rights guaranteed by section 7 of the National Labor Relations Act, as amended, by the Railway Labor Act, as amended, or (sic)

shall file annually a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the following information:

(1) the name under which the labor relations consultant is engaged in doing business and the address of its principal place of business;

(2) receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof;

(3) disbursements of any kind, in connection with such services and the purposes thereof; and

(4) a detailed statement of such agreement or arrangement.

*Provided,* That nothing in this section shall be construed to require a report from a labor relations consultant retained by an employer by reason of his giving advice to such employer or representing such employer in any court or administrative agency or engaging in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

S. 3974 § 103(b) (the Kennedy-Ives bill), Leg. Hist. (Labor) at 471.

under the National Labor Relations Act, an attorney or other consultant who confined himself to giving advice, taking part in collectively bargaining and appearing in court and administrative proceedings nor would such a consultant be required to report. Although this would be the meaning of the language of sections 103(a) and (b) in any event, a proviso to section 103(b) guards against misconstruction.

S.Rep. No. 1684, Leg.Hist. (Labor) at 390.

The opinions in *Douglas v. Wirtz, Price v. Wirtz, Master Printers Association v. Donovan,* and *Humphreys, Hutcheson and Moseley v. Donovan* all refer to S.Rep. No. 1684 on the Kennedy-Ives bill. None of these opinions, however, makes note of what we believe to be a key difference in language between the proviso in § 103(b) of the Kennedy-Ives bill and § 203(c) of the LMRDA. Where § 103(b) of the Kennedy-Ives bill simply states that "nothing in this section shall be construed to require a report from a labor relations consultant retained by an employer by reason of his giving advice ...," § 203(c) of the LMRDA states that "[n]othing in this section shall be construed to require any employer or other person to file a report *covering the*

*services of such person* by reason of his giving or agreeing to give advice...." (Emphasis added.) In other words, while the proviso in the Kennedy-Ives bill merely explicates the circumstances under which a report is not required, § 203(c) of the LMRDA specifically refers to, and places a limitation on, the *content* of the report required by § 203(b). Thus, while the proviso in § 103(b) of the Kennedy-Ives bill seems to be, both by its own terms and in the view of a Senate Committee, merely making an implicit point explicit, § 203(c) is, by its own terms, broader than a mere proviso: it is a limitation on content.

This significant addition to the language of what has become § 203(c) of the LMRDA first appeared in § 103(c) of the Kennedy-Ervin bill of 1959 (S. 505).[7] Though the language of the Kennedy-Ervin bill is quite similar to that of the Kennedy-Ives bill, the language of the proviso in § 103(b) of the Kennedy-Ives bill appears as a new subsection, § 103(c), in the Kennedy-Ervin bill. And as previously noted, the language of the Kennedy-Ervin bill, unlike that of the Kennedy-Ives bill, indicates that no § 103(b) report is required *covering the services* of a consultant with respect to labor relations advice and representation.

---

**7.** Sections 103(b) and (c) of S. 505 read as follows:

(b) Every person engaged in providing labor relations consultant service to an employer engaged in an industry affecting commerce pursuant to any agreement or arrangement under which such consultant undertakes activities where an object thereof is, directly or indirectly,

(A) to persuade employees not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing

(B) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute, except information for use solely in conjunction with a judicial, administrative or arbitral proceeding, shall file annually a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the following information:

(1) the name under which the labor relations consultant is engaged in doing business

and the address of its principal place of business;

(2) receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof;

(3) disbursements of any kind, in connection with such services and the purposes thereof; and

(4) a detailed statement of the terms of such agreement or arrangement.

(c) Nothing in this section shall be construed to require any employer or a labor relations consultant to file a report covering the services of a consultant by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

S. 505 § 103 (the Kennedy-Ervin bill), Leg.Hist. (Labor) at 489.

Nowhere is it noted that § 103(c) of the Kennedy-Ervin bill was considered to be merely an explication of an implicit point, as the proviso to § 103(b) in the Kennedy-Ives bill had been. Rather, § 103(c) seems to be a broad-based exception to the reporting requirement in § 103(b).

The Kennedy-Ervin bill was referred to the Senate Committee on Labor and Public Welfare. After a number of changes not relevant to the issue that here concerns us, the Kennedy-Ervin bill reemerged as S. 1555, accompanied by S.Rep. No. 187. Though, as we have noted, §§ 103(b) and (c) of S. 1555 generally resemble § 103(b) of the Kennedy-Ives Bill, § 103(c) of S. 1555 contains language not found in § 103(b) of the Kennedy-Ives Bill relating to the substantive content of a required report. Similarly (and we believe not coincidentally), though parts of S.Rep. No. 187 on S. 1555 closely resemble S.Rep. No. 1684 on the Kennedy-Ives Bill, S.Rep. No. 187 does not indicate as does S.Rep. No. 1684 that the language of § 103(c) of S. 1555 is there merely to guard against misconstruction. In other words, before the addition of the limiting language to the language that became § 103(c), S.Rep. No. 1684 in describing the proviso indicated that it merely made an implicit point explicit. After the addition of the limiting language (at which time the proviso actually became a separate subsection), the new Senate report (No. 187), which in relevant parts resembled S.Rep. No. 1684, did not carry forward the thought that § 103(c) merely made an implicit point explicit. We believe that this omission from S.Rep. No. 187 is significant.

One part of S.Rep. No. 187 is discussed by the four cases cited in Part I of this opinion as being significant:

> Under section 103(b) every person who enters into an agreement with an employer to persuade employees as regards

the exercise of their right to organize or bargain collectively or to supply an employer with information concerning the activity of the employees or labor organizations in connection with a labor dispute would be required to file a detailed report. An *attorney or consultant who confines himself to giving legal advice*, taking part in collective bargaining and appearing in court or administrative proceedings would not be included among those required to file reports under this subsection. Specific exemption for persons giving this type of advice is contained in subsection (c) of section 103.

S.Rep. No. 187, 1959 U.S.Code Cong. & Ad.News at 2328 (emphasis added). This language is, as noted previously, quite similar to language in S.Rep. No. 1684 describing the Kennedy-Ives bill. *See Douglas v. Wirtz*, 353 F.2d at 33.

It is important, however, to recognize what S.Rep. No. 187 says and what it does not say. It says merely that an attorney who confines himself to giving advice, engaging in collective bargaining, or appearing in court and administrative proceedings is not required to report. Thus, S.Rep. No. 187 indicates merely that an attorney who does not persuade need not even file a report; it in no way specifies what information must be included in such a report when there is persuasion activity and hence an obligation to report. Put another way, while S.Rep. No. 187 makes it clear that an attorney who confines himself to non-persuasion activity need not report at all, it does not address the question of what information a report must contain when an attorney does not confine himself to non-persuasion activities.[8]

Following the Senate's passage of S. 1555, the House considered S. 1555, but instead passed H.R. 8342 and requested a conference with the Senate. The Confer-

---

8. S.Rep. No. 187 also notes that "[t]he committee did not intend to have the reporting requirements of the bill apply to attorneys and labor relations consultants who ... do not engage in activities of the types listed in section 103(b)." 1959 U.S.Code Cong. & Ad.News at 2356. We do not believe that this language informs a decision as to the content of a required report for the reasons already stated in the text; while the language indicates the circumstances under which a report would not be required, it does not address the content of a report once one is required.

ence Committee eventually reached an agreement, adopting the Senate's consultant reporting provisions found in S. 1555.

The court in *Donovan v. Master Printers,* 532 F.Supp. 1140, characterized a reference to the Conference bill by Senator Goldwater (who was one of the Senate conferees) as a "description of the *content* of the report [required by § 203] once the duty [to report] is incurred:

> First. File a report with the Secretary within 30 days of entering into the agreement or arrangement giving all the details concerning it.
>
> Second. File annually with the Secretary for the preceding fiscal year if he received *any* payments pursuant to the agreement or arrangement, a report setting forth *all* receipts from *all* employers, and the sources thereof, on account of labor relations advice or services, as well as any disbursements and their purposes, in connection with such services...."

532 F.Supp. at 1146–47 (emphasis by the district court). What the district court in *Master Printers* did not go on to say is that in the quotation above, Senator Goldwater was referring specifically to the reporting requirement of § 203(b), which is, as we have already acknowledged, an extremely broad requirement. *See* Leg.Hist. (Labor) at 624. The question before us, however, is not the meaning of § 203(b) standing alone, but rather the effect of § 203(c) on the reporting requirement of § 203(b). Senator Goldwater went on to address this issue in the paragraph immediately following the one quoted above:

> Section 203(c) exempts from *all* of the employer and consultant reporting requirements *any* information with respect to services in advising employers or agreeing to represent them before any court, administrative agency, or arbitrator, or agreeing to engage in collective bargaining or negotiate a collective bargaining contract in behalf of the employer.

*Id.* (emphasis by this Court). It is apparent that Senator Goldwater's statements do no

more than faithfully reflect the contradiction in the language of subsections (b) and (c) themselves: one imposes a broad reporting requirement as to labor relations advice and services while the other seems completely to negate it.

Based on our reading of the legislative history, we do not agree with the Fourth, Fifth, Sixth, and Seventh Circuits that the legislative history of the LMRDA supports the view that § 203(c) is merely a proviso to make explicit the implicit triggering requirement of § 203(b). We now turn to the conference committee report on the LMRDA, which we believe to be the most significant indication of congressional intent regarding the content of the annual report required by § 203.

The Conference Managers on the part of the House issued Conf.Rep. No. 1147, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad.News 2503, describing the bill as reported out by the Conference Committee:

SECTION 203—REPORTS OF EMPLOYERS

. . . . .

> Subsection (b) of section 203 of the substitute agreed upon in conference deals with reports by labor relations consultants.
>
> It requires reports from a consultant who enters into an agreement with an employer to engage in any of the activities that, under section 203(a)(4), must be reported by the employer.
>
> Subsection (c) of section 203 of the conference substitute grants a broad exemption from the requirements of the section with respect to the giving of advice. This subsection is further discussed in connection with section 204.

. . . . .

SECTION 204—ATTORNEY–CLIENT COMMUNICATIONS EXEMPTED

The Senate bill provides that an attorney need not include in any report required by the act any information which was lawfully communicated to such attorney by any of his clients in the course

of a legitimate attorney-client relationship.

The conference substitute adopts the provisions of the Senate bill, but in connection therewith the conferees included, in section 203(c), a provision taken from the Senate bill that provides that an employer or other person is not required to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer or the negotiation of an agreement or any question arising thereunder. Conf.Rep. No. 1147, 1959 U.S.Code Cong. & Ad.News at 2504–05.

Conf.Rep. No. 1147 specifically refers to § 203(c) as a "broad exemption from the requirements of [§ 203(b) ]." Only the district court in *Donovan v. Master Printers* addressed this statement from the conferees' report, and that court had already noted its belief, based on the proviso language in S.Rep. No. 1684 on the Kennedy-Ives bill, that the purpose of subsection (c) was merely to make clear the import of subsection (b). The court reconciled the language used by the conferees with the language in S.Rep. No. 1684 by stating that the "interpretation [of § 203(c) as merely a clarification of § 203(b) ] is consistent with the House conferees statement that § 203(c) 'grants a broad exemption from the requirements of [§ 203] with respect to the giving of advice.'" 532 F.Supp. at 1147.

■ We do not believe that the two statements can be reconciled merely by claiming that they are consistent; a subsection that creates a "broad exemption" from a statutory reporting requirement is a vastly different thing from a subsection that is merely a "clarification" of the requirement. Were we forced to choose in ascertaining congressional intent between a Senate report dealing only with a predecessor of the LMRDA and a conference committee report on the final version of the LMRDA,

we believe it would be the better practice to choose the conference committee report. But we have already noted, and we emphasize again, that the Senate report on § 103(b) of the Kennedy-Ives bill dealt with language differing in a significant way from the language we currently interpret. Thus, we believe the statement in Conf. Rep. No. 1147 is the most compelling indication of congressional intent as to the meaning of § 203(c).

■ We are further persuaded in this reading of § 203 by what appears to have been a deliberate choice by Congress to introduce an element of congruity into the reporting requirements of the LMRDA. *See* Note, *Two Views of a Labor Relations Consultant's Duty to Report Under Section 203 of the LMRDA*, 65 Mich.L.Rev. 752, 757 & n. 23 (1967). Ordinarily, the LMRDA requires reports when an arrangement takes parties into a "gray area." In such situations, both parties generally are required to file reports and each party is required to detail its dealings with the other. *See, e.g.,* LMRDA §§ 202(a)(2), 203(a)(1) (both parties must report a loan made by an employer to a union officer or employee), §§ 202(a)(6), 203(b) (both parties must report payments by an employer's labor relations persuader to a union), §§ 203(a)(4), 203(b) (both parties must report certain arrangements between an employer and a persuader).

As noted by the conference committee report, § 203 "requires reports from a consultant who enters into an agreement with an employer to engage in any of the activities that, under § 203(a)(4), must be reported by the employer." Conf.Rep. No. 1147, 1959 U.S.Code Cong. & Ad.News at 2505. But an employer who has done no more than request labor relations advice from an attorney has no obligation under the LMRDA to file a report. *See* LMRDA §§ 203(a), 203(d). Earlier in this opinion we have made the distinction between the *duty* to report and the *content* of the report required once the duty is incurred, and we do not seek to blur that distinction now. Thus, we do not believe the statement from

the conference committee report quoted above to be a definitive indication of a limitation on the *content* of a report, since by its terms it addresses only the duty to report. However, given the idea of congruity of reporting legislated by Congress in other aspects of the LMRDA, we believe it extraordinarily unlikely that Congress intended to require the *content* of reports by persuaders under § 203(b) and (c) to be so broad as to encompass dealings with employers who are not required to make any report whatsoever under § 203(a)(4).

Giving effect to § 203(c) as the "broad exemption" that Conf.Rep. No. 1147 indicates it was intended to be, we hold that the annual report required by § 203(b) need not cover the services of a consultant by reason of his giving advice to an employer, representing an employer before a court or administrative agency, or engaging in collective bargaining on behalf of an employer, unless the consultant has performed persuader activities for that employer.[9]

### III.

Because we believe that the legislative history of the LMRDA supports the interpretation of § 203 ascribed to it by the Rose Law Firm, we need not, as we earlier mentioned, reach the constitutional questions raised by the firm. We do wish to note, however, that even were the legislative history more ambiguous than we believe it to be, we still would be inclined to

adopt the interpretation of § 203 we adopt here today.

The Supreme Court has often noted the " 'cardinal principle that [a court should] first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided.' " *See United States v. Security Industrial Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982) (quoting *Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978)). The constitutional issues raised by a broader reading of the § 203 reporting requirement are certainly not insubstantial.[10] In particular, we have difficulty perceiving the compelling governmental interest to be served by the reporting of all receipts and disbursements related to any labor relations advice given to or services performed for clients for whom a consultant has not performed any persuader activity. The reading we here give § 203 enables us to avoid constitutional questions that neither the LMRDA nor its history compels us to confront.

The judgment of the District Court is reversed.

BRIGHT, Senior Circuit Judge, dissenting.

The Rose Law Firm departed from the usual counseling and litigation activities of a law firm by engaging in persuader activities during its fiscal year ending in January 1981. As legal counsel for the Monark Boat Company, the firm through one or

9. Accordingly, this is not a case in which we should defer to an interpretation of the statute adopted by the agency charged with its enforcement. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron, U.S.A. v. Natural Resources Defense Council,* ⸺ U.S. ⸺, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984); *see generally Securities and Exchange Commission v. Sloan,* 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978). Nor should the fact that the Department of Labor has long construed the statute to require extensive disclosure of information unrelated to persuader clients determine our result. While the " 'proposition [that a longstanding agency interpretation of a disputed statute should be given great weight] may, as a general

matter, be conceded, ... it must be tempered with the caveat that an agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate.' " *Id.* at 119, 98 S.Ct. at 1712 (quoting *Federal Maritime Commission v. Seatrain Lines, Inc.,* 411 U.S. 726, 745, 93 S.Ct. 1773, 1785, 36 L.Ed.2d 620 (1973)).

10. At least six Circuit Judges have indicated their belief that the Department of Labor's interpretation of § 203 could fail a constitutional challenge. *See Master Printers Association v. Donovan,* 699 F.2d at 373 (Pell, Circuit Judge, dissenting); *Price v. Wirtz,* 412 F.2d at 656 (Dyer, Circuit Judge, with whom Gewin, Coleman, Ainsworth, and Godbold, Circuit Judges, join, dissenting).

more of its attorneys delivered talks to Monark's employees to persuade them not to join the union. The firm agreed that it engaged in persuader activity under section 203(b) of the LMRDA, 29 U.S.C. § 433(b), but it refuses to disclose for the period in question all receipts and disbursements on account of labor relations advice and services. It agrees to disclose only its financial transactions with the firm who hired it as a persuader, that is, Monark Boat Company.

Appellee Secretary of Labor asserts that engaging in persuader activity with one client is sufficient to trigger the requirements for disclosure in section 203(b), and the statute requires the persuader law firm to disclose *all* of its receipts and disbursements in the labor relations field, including those for clients who did not seek to utilize the firm as a persuader.

The rationale for a construction of the statute that includes the obligation of an attorney serving as a persuader to also report non-persuader activities is explained in *Price v. Wirtz*, 412 F.2d 647 (6th Cir. 1969) (en banc):

> The legislative judgment that one who engages in the persuader business must be subjected to the pressure of revealing publicity is amply justified by the difficulty in distinguishing between those activities that are persuader activities and those that are not, and by the opportunity for misleading concealment of the true nature of such Attorney's work in situations involving intricate corporate conglomerate associates or, equally pressing, industry-wide labor controversies. Behind this judgment, of course, was the congressional conviction that quite without regard to the motives or methods of particular individuals engaging in it, the persuader business was detrimental to good labor relations and the continued public interest. Since a principal object of LMRDA was neutralizing the evils of persuaders, it was quite legitimate and consistent with the Act's main sanction of goldfish-bowl publicity to turn the spotlight on the lawyer who wanted not

only to serve clients in labor relations matters encompassed within § 203(c) but who wanted also to wander into the legislatively suspect field of a persuader. *Id.* at 650.

The district court rejected the contentions of the Rose Law Firm, and its opinion, as acknowledged by the majority, is supported by decisions of four circuits: *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211 (6th Cir.1985); *Master Printers Association v. Donovan*, 699 F.2d 370 (7th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *Price v. Wirtz*, 412 F.2d 647 (5th Cir. 1969) (en banc); *Douglas v. Wirtz*, 353 F.2d 30 (4th Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665 (1966). I agree with the construction of the statute reached by the Fourth, Fifth, Sixth and Seventh Circuits. I would also reject the constitutional arguments submitted by the Rose Law Firm as similar contentions were raised and rejected in *Humphreys.*

The majority here walks out of step with four circuits interpreting the statutes here in question. I disagree with the majority and would affirm the well-reasoned decision of the district judge who has rendered a decision based on existing precedents.