INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Appellees,

v.

Elizabeth DOLE, Secretary of Labor, et al., Appellants.

No. 88–5109.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1989.

Decided March 10, 1989.

Bruce G. Forrest, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Leonard Schaitman, Atty., Dept. of Justice, George R. Salem, Allen H. Feldman, Steven J. Mandel, and Bette J. Briggs, Attys., Dept. of Labor, were on the brief, for appellants.

Laurence Gold, and Laurence E. Gold, with whom Wendy L. Kahn, Jordan Rossen, and Leonard Page were on the brief, for appellees.

John S. Irving, Yosef J. Riemer, Stephen A. Bokat, Peter G. Nash, Jan Anundson, Robert Lewis, Francis T. Coleman, and Maurice Baskin were on the brief for amicus curiae, the Chamber of Commerce of the U.S., National Ass'n of Mfrs. of the U.S., American Soc. for Personnel Admin., American Retail Federation, Associated Builders and Contractors, Inc., and Master Printers of America, urging reversal of district court's opinion and affirmance of the Secretary's statutory interpretations.

Charles E. Sykes was on the brief for amicus curiae Kawasaki Motors Mfg. Corp., USA, urging reversal of district

court's decision and affirmance of the Secretary's statutory interpretations.

Before MIKVA, RUTH BADER GINSBURG, Circuit Judges, and HOGAN, District Judge.*

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

The Secretary of Labor (Secretary) seeks our review of a district court decision rejecting two Department of Labor (Department) interpretive rulings concerning the reports required of employers under section 203 of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA or Act), 29 U.S.C. § 433 (1982). One of the contested rulings concerns payments to consultants to devise for the employer's use personnel policies to discourage unionization. The other concerns anti-union activities engaged in by supervisors, for which the supervisors receive no pay beyond their regular salaries. We conclude that the LMRDA is silent or ambiguous with respect to the issues before us and that the Secretary rationally construed the statute in ruling that reporting is not required in the circumstances she addressed. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We therefore reverse the district court's judgment for plaintiffs and remand with instructions to enter judgment for defendants.

## I.

This case evolved from a March 1982 complaint filed with the Secretary of Labor by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW or Union). The UAW alleged that Kawasaki Motor Corporation and its attorney-consultants had engaged in anti-union conduct that should have been reported under section 203(a), (b) of the LMRDA, 29 U.S.C. § 433(a), (b). In September 1982, the Secretary having declined to take enforcement action, the Union commenced an action in district court for declaratory relief and to compel the Department of Labor to proceed against Kawasaki. Concluding that it lacked authority to review the Department's decision not to take enforcement action, *see Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the district court dismissed the complaint. *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Donovan,* 577 F.Supp. 398 (D.D.C.1983).

We reversed in part. *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Brock,* 783 F.2d 237 (D.C.Cir.1986). Acknowledging that the Department's decision not to proceed against Kawasaki and its attorneys was unreviewable in court, we nonetheless declared reviewable the Secretary's announcement of two substantive positions in a January 1983 Statement of Reasons: [1]

1) A consultant's activity is properly "characterized as advice [and therefore exempt from reporting under section 203(c) of the LMRDA, 29 U.S.C. § 433(c) ] if it is submitted orally or in written form to the employer for his use, and the employer is free to accept or reject the oral or written material submitted to him."

2) "[E]mployers are not required to report regular wages paid to regular supervisors and other employees."

783 F.2d at 243 (quoting Statement of Reasons at 3, 5). Holding that the Union "may challenge the announced statutory interpretations as arbitrary, capricious, or contrary to law," we "remand[ed] the case to the district court to consider those challenges." 783 F.2d at 252. From the district court's

---

* Of the U.S. District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The Statement was submitted to the district court as an addendum to the government's motion to dismiss. *See* 783 F.2d at 242 & n. 3.

The government reminds us of its view that reasons it submitted in litigation in explanation of a non-enforcement policy did not convert a non-reviewable case into a reviewable one. Brief for Appellants at 3.

decision declaring the Secretary's constructions impermissible and accordingly granting summary judgment to the UAW, *International Union v. Secretary of Labor*, 678 F.Supp. 4 (D.D.C.1988), the Secretary pursues this appeal.

## II.

■ We consider first the Secretary's announcement that a consultant law firm does not engage in reportable activity under the LMRDA when it devises personnel policies to discourage unionization, so long as the work product, whether written or oral, "is submitted ... to the employer for his use, and the employer is free to accept or reject [the submission]." Statement of Reasons at 3. The Secretary contrasted activity that would not constitute advice: "where the attorney-consultant has direct contact with employees or he himself engages in the persuader activity alleged." *Id.*

Underlying the Secretary's ruling and the district court's opposing view is a tension between the coverage provisions of the LMRDA, and the Act's exemption for advice. Section 203, the section at issue, initially instructs, in subsections (a)(4) and (b), reporting by employers and consultants of any arrangements for activities that have as "an object" the direct or indirect persuasion of employees with respect to the exercise or non-exercise of their organizational and bargaining rights. 29 U.S.C. § 433(a)(4), (b). But the next prescription, set out in subsection (c), directs: "Nothing in this section [*i.e.*, section 203] shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice...." 29 U.S.C. § 433(c).

The district court acknowledged that "Congress intended to grant broad scope to the term 'advice.'" 678 F.Supp. at 6 (citing H.R. CONF. REP. No. 1147, 86th Cong., 1st Sess. 33 (1959), *reprinted in* 1 National Labor Relations Board, *Legislative History of the Labor–Management Reporting and Disclosure Act* 937, 1959 U.S. CODE CONG. & ADMIN. NEWS 2503, 2505).[2] Nonetheless, that court also stressed the legislature's intention to cover comprehensively employer-consultant endeavors (direct or indirect) to persuade employees regarding labor organization. In the overlap area, the district court indicated, where the activity might be characterized both as advice to the employer and as persuasion of employees, the coverage section controls: "[W]hatever may be the scope of the term 'advice,' it does not exempt from the reporting requirement activities that amount to persuasion." 678 F.Supp. at 6. A "persuasion" of employees objective, the district court concluded, renders the "advice" exemption "inapplicable." *Id.* at 7. Advising employers (including supervisors) how to persuade employees against unionization, the district court therefore held, could not qualify for exemption.

The Secretary reconciles section 203's coverage and exemption prescriptions differently. If the arrangement is one solely for advice to the employer and his supervisor representatives, then it matters not, according to the Secretary, that the advice has as "an object" employee persuasion. The very purpose of section 203's exemption prescription, the Secretary maintains, is to remove from the section's coverage certain activity that otherwise would have been reportable. In the overlap area, the Secretary thus concludes, the exemption direction, not the coverage provision, generally must control.[3]

---

**2.** The Conference Report cited by the district court states: "Subsection (c) of section 203 ... grants a broad exemption from the [reporting] requirements of the section with respect to the giving of advice."

**3.** The district court stated that if the Secretary's interpretation is accepted, then the decisions of four circuits on the advice exemption "would have to be regarded as error." 678 F.Supp. at 7. We disagree. The circuit decisions to which the

district court referred addressed a different issue: whether a consultant who engages in reportable persuasion on behalf of one client must include in its report information about advice given to other clients for whom no persuasion was performed. The answer returned in four of five circuits is yes. *See Humphreys, Hutcheson and Mosely v. Donovan*, 755 F.2d 1211 (6th Cir.1985); *Master Printers Ass'n v. Donovan*, 699 F.2d 370 (7th Cir.1983), *cert. de-*

Given the tension Congress created, and the deference due the Secretary's reconciliation, we cannot call arbitrary her view that if an activity is properly characterized as "advice," reporting generally is not required. We therefore proceed to inquire whether the Secretary has reasonably delineated what constitutes advice within the meaning of section 203(c), 29 U.S.C. § 433(c). The statute itself, always the starting point, nowhere attempts a definition of the term. *See* Memorandum from Charles Donahue, Solicitor of Labor, to John L. Holcombe, Commissioner, Bureau of Labor–Management Reports, at 1 (Feb. 19, 1962) [hereafter Donahue Memo].

In a 1962 effort to describe the "advice" exemption, LMRDA Interpretative Manual Entry § 265.005 (Jan. 19, 1962) (Scope of the "Advice" Exemption) [hereafter Manual], the Department contrasted 1) material a consultant delivers directly to employees to persuade them regarding organizational rights, with 2) material the employer drafts, then refers to a consultant for review or revision. The first category falls outside, and the second, inside, the advice exemption. There is no dispute over either of these rankings.

The "more difficult" to classify cases, the Department has acknowledged, involve presentations for and to the employer prepared entirely by the consultant, *e.g.*, a fully scripted speech for supervisors to deliver.[4] In such cases, it has been the Department's policy that

> where the employer is free to accept or reject the written material prepared for

him and there is no indication that the middleman is operating under a deceptive arrangement with the employer, the fact that the middleman drafts the material in its entirety will not in itself generally be sufficient to require a report.

Manual at § 265.005; Donahue Memo at 2; *see also Pressures in Today's Workplace: Hearings Before the Subcomm. on Labor–Management Relations of the House Comm. on Educ. and Labor,* 96th Cong., 2d Sess., vol. IV at 5 (1980) (statement of William P. Hobgood, Ass't Sec. of Labor for Labor–Management Relations) [hereafter Hobgood Statement].[5]

The UAW reads the Secretary's 1983 Statement of Reasons passage on advice to embrace a "new, and more far-reaching, interpretation of the advice exception," one that exempts "*ipso facto* any and all behind-the-scenes consultant activity that the employer theoretically retains the option to reject." Joint Brief for Plaintiffs–Appellees and Amicus Curiae AFL–CIO at 15, 35. We discern no such large "change of direction." *See id.* at 36. The relevant lines from the Statement of Reasons, we reiterate, are these:

> The UAW ... alleged that the consultants devised personnel policies to discourage unionization. The Department has consistently considered that in providing the employer with these services, the consultants were engaged in activities categorized as "advice," explicitly exempt from the reporting requirements under section 203(c) of the Act. An activity is characterized as advice if it is

---

nied, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *Price v. Wirtz,* 412 F.2d 647 (5th Cir.1969) (*en banc*); *Douglas v. Wirtz,* 353 F.2d 30 (4th Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665 (1966). *But see Donovan v. Rose Law Firm,* 768 F.2d 964 (8th Cir. 1985). These decisions do not resolve the threshold question presented by this case: what is the appropriate characterization of activity that can be viewed as both advice and persuasion?

**4.** The Union distinguishes doing a task for someone (not advice) and providing advice on how the task should be done. Joint Brief for Plaintiffs–Appellees and Amicus Curiae AFL–CIO at 16. "Advice," as the UAW defines it,

could under no circumstances comprehend scripting an employer's anti-union campaign. But the term "advice," in lawyers' parlance, may encompass, *e.g.*, the preparation of a client's answers to interrogatories, *see* FED.R.CIV.P. 33, the scripting of a closing or an annual meeting.

**5.** The legislative history confirms a prime congressional concern to uncover employer-expenditures for anti-union persuasion carried out, often surreptitiously, not by employers or supervisors, but by consultants or middlemen. *See, e.g.,* S.REP. No. 187, 86th Cong., 1st Sess. 10–11 (1959), *reprinted in* 1 National Labor Relations Board, *Legislative History of the Labor–Management Reporting and Disclosure Act* 406–07, 1959 U.S. CODE CONG. & ADMIN. NEWS 2318, 2326–27.

submitted orally or in written form to the employer for his use, and the employer is free to accept or reject the oral or written material submitted to him.

Statement of Reasons at 3. This ruling is appropriately assessed in the setting and context from which it arose—a company's recourse to its lawyers to devise personnel policies to discourage unionization. It posits a submission to and for the use of the employer, a right to reject that is real, not theoretical.

The UAW recalls, however, that in 1962, the Solicitor of Labor cautioned that "there are an infinite variety of arrangements for labor relations services which may involve the giving of advice to an employer in some form or degree," and that "determinations in borderline situations will have to be made on a case by case basis." Donahue Memo at 1. While the 1983 Statement of Reasons, filed under the pressure of a litigation, is short on qualifying words, the Secretary has acknowledged that "problematic activities" remain, situations where "[t]he source of written materials distributed to employees may be unclear," cases that "test the fringes of the definition of 'advice.'" Reply Brief at 12–13; *cf.* Hobgood Statement at 5.

Recognizing the Secretary's right to shape her enforcement policy to the realities of limited resources and competing priorities, and comprehending her ruling on advice to involve no *volte face* from long-standing statutory definition and interpretation, we reject the challenge to her ruling.

### III.

■ When supervisors engage in anti-union persuader activities, but receive no compensation beyond their regular salaries, does the LMRDA require employer reporting? That second question remanded for district court consideration calls for construction of LMRDA section 203(e), 29 U.S. C. § 433(e), which reads:

> **(e) Services by and payments to regular officers, supervisors, and employees of employer**

Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of such employer.

In the district court's view, all persuader activities in which supervisors engage, even entirely lawful activities, must be reported, because section 203(e) "exempts from the reporting requirement only compensation for regular services, not for persuader activities." 678 F.Supp. at 8. The exemption, under this reading, appears to have no office. The LMRDA's domain is persuader activities. No exemption is needed for activities that fall outside the Act's domain. The UAW does not defend the district court's all-inclusive interpretation, so we turn from it to the Union's position.

The UAW seeks affirmance of the district court's disposition on this branch of the case only in part. According to the Union, lawful persuader activities by supervisors are exempt, but the portion of supervisors' salaries attributable to unfair labor practices must be reported. Service as a regular supervisor may comprehend lawful persuasion, the UAW concedes, but not illegal conduct. *See* Joint Brief for Plaintiffs–Appellees and Amicus Curiae AFL–CIO at 45–46 & nn. 27, 28. Formerly, the Union observes and the Secretary acknowledges, a "split-income theory" held sway. Under that theory, if the National Labor Relations Board ruled that a supervisor committed an unfair labor practice, a prorated share of the supervisor's salary would become reportable by the employer.

In the 1983 Statement of Reasons, the Secretary announced the Department's determination, in the exercise of statutory discretion, to drop application of the "split-income theory." Under the Secretary's current interpretation, "employers are not required to report regular wages paid to

regular supervisors and other employees." Statement of Reasons at 5. This represents a change, and we address whether it was adequately explained. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 57, 103 S.Ct. 2856, 2874, 77 L.Ed.2d 443 (1983).

The language of the section 203(e) exemption, the Secretary contends, is not so clear as to exclude her reading. She points out that "[the] provision makes no distinction between lawful and unlawful persuader activities." Brief for Appellants at 45; *see* Statement of Reasons at 5 (reference to provision's ambiguity). She also cites a passage from the legislative history explicitly stating that "[n]one of the reporting requirements are applicable where the services are rendered by a regular officer, supervisor, or employee of the employer." 105 Cong.Rec. 19,761 (1959) (statement of Sen. Goldwater); *see also* S.Rep. No. 187, at 40, *reprinted in* 1 National Labor Relations Board, *Legislative History of the Labor–Management Reporting and Disclosure Act* 436, 1959 U.S. Code Cong. & Admin.News 2318, 2357 ("Employers are not required to file any report concerning expenditures in the form of compensation for the services of any of their regular supervisors, or employees.").

Once it is recognized that the statute allows room for administrative discretion, the Secretary can move to operational considerations. The Department's analysis of complaints made to the Secretary indicated that "the split income theory is neither workable nor practicable." Statement of Reasons at 5. Reporting under the theory would trail NLRB unfair labor practices adjudications, determinations made long after the conduct occurred. The LMRDA is designed to uncover or reveal hidden or undisclosed activities, but the unfair labor practice proceedings would have already placed a spotlight on the facts. Given the Board's remedial arsenal, the Secretary concluded, there is no need for an LMRDA shadow operation.

We find the Secretary's accounting for not applying the split-income theory rational. It is not within our province to second-guess the resource allocation and policy judgments she made. *See Chevron*, 467 U.S. at 863–66, 104 S.Ct. at 2792–93. Accordingly, her ruling survives judicial review.

Conclusion

For the reasons stated, the judgment of the district court rejecting the Secretary's interpretive rulings is reversed, and the case is remanded with instructions to enter judgment for defendants.

*It is so ordered.*